# UNITED STATES DISTRICT COURT

## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CYNTHIA BOSS, | Case No.: 1:17-cv-00042-JJM-LDA |
|      Plaintiff, | |
|      v. | |
| FEDERAL HOUSING FINANCE AGENCY, FEDERAL NATIONAL MORTGAGE ASSOCIATION, AND SANTANDER BANK, N.A., | |
|      Defendants. | |

## REPLY IN SUPPORT OF FANNIE MAE'S AND FHFA'S MOTION FOR JUDGMENT ON THE PLEADINGS

1

2

3

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................ii

INTRODUCTION...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.   FHFA AS CONSERVATOR IS NOT A GOVERNMENT ACTOR FOR PURPOSES
     OF CONSTITUTIONAL CLAIMS. .............................................................................. 2

II.  FANNIE MAE IS NOT A GOVERNMENT ACTOR FOR PURPOSES OF
     CONSTITUTIONAL CLAIMS. .................................................................................... 7

     A.  FHFA's Conservatorship Does Not Establish Permanent Government Control
         of Fannie Mae Under *Lebron*. .............................................................................. 8

     B.  Treasury's Financial Support of the Fannie Mae Conservatorship Does Not
         Establish Permanent Government Control Under *Lebron*. ......................................... 15

III. *LEBRON* CONTROLS THESE ISSUES AND SUBSEQUENT DECISIONS DO
     NOT UNDERMINE *LEBRON*'S PERMANENCY REQUIREMENT. ................................. 17

CONCLUSION ....................................................................................................................... 21

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5
*U.S. ex rel. Adams v. Aurora Loan Servs., Inc.*,
   813 F.3d 1259 (9th Cir. 2016) ....................................................................... 4, 9, 20

6
*AG Route Seven P'ship v. United States*,
   57 Fed. Cl. 521 (2003) ....................................................................................... 6

7

8
*Alley v. Resolution Trust Corp.*,
   984 F.2d 1201 (D.C. Cir. 1993) ............................................................................ 4

9

10
*Am. Bankers Mortg. Corp. v. Freddie Mac*,
   75 F.3d 1401 (9th Cir. 1996) ........................................................................ 18, 20

11
*Ambase Corp. v. United States*,
   61 Fed. Cl. 794 (Fed. Cl. 2004) ........................................................................... 6

12

13
*Ameristar Fin. Servicing Co., LLC v. United States*,
   75 Fed. Cl. 807 (2007) ...................................................................................... 14

14
*Barrios-Velazquez v. Asociacion de Empleados del Estado Libre Asociado de*
15
   *Puerto Rico*,
   84 F.3d 487 (1st Cir. 1996) ............................................................................... 18

16
*Basinger v. Wal-Mart Stores, Inc.*,
17
   No. 98-334-P-H, 1999 WL 33117106 (D. Me. Jan. 27, 1999) ..................................... 12

18
*Becker v. Gallaudet University*,
   66 F. Supp. 2d 16 (D.D.C. 1999) ........................................................................ 20
19

20
*Bernard v. Fannie Mae*,
   No. 12-14680, 2013 WL 1282016 (E.D. Mich. Mar. 27, 2013) .................................... 8

21
*Brentwood Acad. v. Tennessee Secondary School Athletic Ass'n*,
22
   531 U.S. 288 (2001) .................................................................................... 18, 19

23
*Caroline Hunt Trust Estate v. United States*,
   470 F.3d 1044 (Fed. Cir. 2006) .......................................................................... 15
24

25
*Dep't of Transp. v. Ass'n of Am. R.R.*,
   135 S. Ct. 1225 (2015) ..................................................................................... 20

26
*Dias v. Fannie Mae*,
27
   990 F. Supp. 2d 1042 (D. Haw. 2013) ................................................................ 3, 8

28
*Fannie Mae v. Mandry*,
   No. 12-cv-13236, 2012 WL 5996537 (E.D. Mich. Oct. 12, 2012) ................................ 6

*Fannie Mae v. Mandry*,
   No. 12-cv-13236, 2013 WL 687056 (E.D. Mich. Feb. 26, 2013) .........................................3, 6

*FDIC v. Meyer*,
   510 U.S. 471 (1994) .............................................................................................................6, 7

*FDIC v. Morley*,
   867 F.2d 1381 (11th Cir. 1989) ...............................................................................................15

*FHFA v. Countrywide Fin. Corp.*,
   900 F. Supp. 2d 1055 (C.D. Cal. 2012) ................................................................................5, 6

*FHFA v. Royal Bank of Scotland Grp. PLC*,
   No. 3:11-cv-01383, 2012 WL 3580522 (D. Conn. Aug. 17, 2012) ......................................5, 6

*FHFA v. UBS Americas Inc.*,
   No. 12-3207 (2d Cir. Oct. 25, 2012) .........................................................................................6

*Freddie Mac v. Shamoon*,
   922 F. Supp. 2d 641 (E.D. Mich. 2013) ....................................................................................3

*Herron v. Fannie Mae*,
   857 F. Supp. 2d 87 (D.D.C. 2012) ....................................................................................passim

*Herron v. Fannie Mae*,
   861 F.3d 160 (D.C. Cir. 2017) ..........................................................................................passim

*Holland v. United States*,
   75 Fed. Cl. 483 (2007) .............................................................................................................15

*In re Kapla*,
   485 B.R. 136 (Bankr. E.D. Mich. 2012) ....................................................................................8

*Lebron v. Nat'l R.R. Passenger Corp.*,
   513 U.S. 374 (1994) ..........................................................................................................passim

*Loren v. City of New York*,
   No. 16-cv-3605, 2017 WL 5903358 (S.D.N.Y. Nov. 28, 2017) ..............................................20

*Matter of: S.E. James & Co.*,
   B-415733, 2018 WL 834433 (Comp. Gen. Feb. 7) ...................................................................8

*Matveychuk v. One W. Bank, FSB*,
   No. 1:13-CV-3464, 2016 WL 4059681 (N.D. Ga. Jan. 28, 2016) .............................................8

*May v. Wells Fargo Bank, NA.*,
   No. 4:11-3516, 2013 WL 3207511 (S.D. Tex. June 24, 2013) ..............................................3, 8

*Meridian Invs., Inc. v. Freddie Mac*,
   855 F.3d 573 (4th Cir. 2017) ................................................................................9, 16, 19, 21

*Mik v. Freddie Mac*,
    743 F.3d 149 (6th Cir. 2014) ............................................................................. 18

*Morin v. Consol. Rail Corp.*,
    810 F.2d 720 (7th Cir. 1987) ............................................................................. 10

*Northrip v. Fannie Mae*,
    527 F.2d 23 (6th Cir. 1975) ............................................................................... 19

*Parra v. Fannie Mae*,
    No. 13-cv-4031, 2013 WL 5638824 (C.D. Cal. Oct. 16, 2013) ............................... 3

*Pennsylvania v. Board of Directors of City Trusts of Phila.*,
    353 U.S. 230 (1957) ......................................................................................... 21

*United States ex rel. Petras v. Simparel, Inc.*,
    857 F.3d 497 (3d Cir. 2017) ................................................................................ 4

*Posey v. Tenn. Valley Auth.*,
    93 F.2d 726 (5th Cir. 1937) ............................................................................... 12

*Regional Rail Reorganization Act Cases*,
    419 U.S. 102 (1974) ............................................................................. 10, 11, 16

*Roberts v. Cameron-Brown Co.*,
    556 F.2d 356 (5th Cir. 1977) ............................................................................. 19

*Rubin v. Fannie Mae*,
    587 F. App'x 273 (6th Cir. 2014) ....................................................................... 8, 9

*Schock v. FDIC*,
    118 F. Supp. 2d 165 (D.R.I. 2000) ....................................................................... 6

*Schock v. FDIC*,
    254 F.3d 1 (1st Cir. 2001) ................................................................................... 6

*Sprauve v. W. Indian Co.*,
    799 F.3d 226 (3d Cir. 2015) ......................................................................... 12, 20

*Syriani v. Freddie Mac Multiclass Certificates, Series 3365*,
    No. CV 12-3035, 2012 WL 6200251 (C.D. Cal. July 10, 2012) ............................... 3

*United States v. Beszborn*,
    21 F.3d 62 (5th Cir. 1994) ............................................................................... 3, 4

*United States v. Ely*,
    142 F.3d 1113 (9th Cir. 1998) ............................................................................. 7

*United States v. Heffner*,
    85 F.3d 435 (9th Cir. 1996) ................................................................................. 4

*Wiggins v. JP Morgan Chase Bank,*
    2:14-cv-11103, 2015 WL 868933 (S.D.W.V. Feb. 27, 2015) ................................. 15

**Statutes**

12 U.S.C.
    § 1723(b) ................................................................................................................ 16
    § 4617(a)(2) .............................................................................................................. 8
    § 4617(b)(2)(A)(i) .................................................................................................... 2

**Other Authorities**

Grant S. Nelson, *Confronting the Mortgage Meltdown: A Brief for the
    Federalization of State Mortgage Foreclosure Law*, 37 Pepp. L. Rev. 583
    (2010) ....................................................................................................................... 2

65 Emory L.J. 107, 109-10 (2015) ................................................................................... 2

FDIC OIG, *Receivership Termination Activity* 2 (Sept. 20, 2002),
    https://www.fdicoig.gov/sites/default/files/publications/02-032.pdf ..................... 10

*Georgia Real Estate Finance and Foreclosure Law* § 14:2 ............................................. 1

James Sterngold, *85% U.S. Stake in Conrail Sold for $1.6 Billion*, N.Y. Times
    (Mar. 27, 1987), http://.nytimes.com/////-us-stake-in-conrail-sold-for-1.6-
    billion.html?=1&sq=conrail&st=nyt .................................................................... 10

U.S. Dep't of the Treasury, *Where Did The Money Go?*(Nov. 15, 2016, 2:02 PM),
    https://www.treasury.gov/initiatives/financial-stability/about-
    tarp/Pages/where-did-the-money-go.aspx .............................................................. 15

William E. Eye, Comment, *Are Fannie Mae and Freddie Mac State Actors? State
    Action, Due Process, & Nonjudicial Foreclosure* ................................................... 2

**INTRODUCTION**

Defendants' motion established that Fannie Mae and FHFA, as Fannie Mae's Conservator, are not government actors for purposes of constitutional claims because conservatorship does not amount to permanent government control under *Lebron*, the governing Supreme Court precedent.  In response, Plaintiff argues that Defendants are government actors, primarily because conservatorship purportedly puts the Enterprises under permanent government control or because *Lebron* supposedly does not govern.

Plaintiff is wrong.  Unanimous authority, including recent, on-point decisions of two federal appellate courts and at least 36 federal district judges, confirms that *Lebron* controls and that neither the Enterprises nor FHFA as their Conservator can be deemed a government actor subject to constitutional claims because conservatorship, though indefinite, is inherently temporary.[1]

Facing this solid wall of authority, Plaintiff asserts that this case "involves a murky area of constitutional jurisprudence"—and that the roughly 40 on-point federal decisions issued to date are all "clearly erroneous or too cursory to be reliable," and "have been widely criticized by legal scholars" in publications such as *Georgia Real Estate Finance and Foreclosure Law*.  Opp. at 4-5 nn.2-3.  Plaintiff is wrong again.  These articles express their authors' wish that the law were different; they do not describe the actual state of the law this Court must apply.  Even the Georgia publication, whose authors include foreclosure-relief advocates rather than neutral "legal scholars,"[2] acknowledges that the "initial lower federal court decisions [that] have addressed the implications of the *Lebron* test as applied to the conservatorship of Fannie Mae and Freddie Mac have concluded that *state action is not present*," and reiterates that "[d]ecisions that . . . evaluate the *Lebron* factors in light of the 2008 [conservatorship] conclude that *state action is not present*."  F. Alexander et al., *Georgia Real Estate Finance and Foreclosure Law*

---

[1]     For the Court's convenience, Defendants attach a list of the federal court decisions as Appendix A.

[2]     The authors include the general counsel of the Center for Community Progress and an attorney with the Atlanta Legal Aid Society's Home Defense Program.

§ 14:2 (emphasis added).[3]

In any event, courts—who base their decisions on precedent—have carefully considered the same arguments Plaintiff offers here and uniformly rejected them as foreclosed by Supreme Court authority. The district court and Court of Appeals opinions in *Herron*, for example, analyze and apply the governing precedents; they are neither "clearly erroneous [n]or too cursory to be reliable." *See* Opp. at 4 n.2. If some of the many other decisions—a few of which expressly adopt the *Herron* district court's analysis with little additional discussion—are brief, that confirms the law is clear, not "murky" as Plaintiff suggests.

Plaintiff's arguments fail, and the Court should grant Defendants' Motion.

## ARGUMENT

## I.   FHFA AS CONSERVATOR IS NOT A GOVERNMENT ACTOR FOR PURPOSES OF CONSTITUTIONAL CLAIMS.

Plaintiff argues primarily that FHFA is a government actor for purposes of this case because it is a federal agency, and that Fannie Mae must therefore be one too because it operates under FHFA's conservatorship. Opp. at 5-6. Plaintiff is wrong on both counts.

No one could question that FHFA is a federal agency. But that is of no moment here, because Plaintiff's allegations as to FHFA concern only its capacity as Conservator of Fannie Mae—a private corporation—not as a federal regulatory agency; Plaintiff neither alleges nor could allege that FHFA, in connection with the foreclosure at issue, exercised any power or authority beyond the private contractual rights it inherited as Fannie Mae's statutory successor. *See* 12 U.S.C. § 4617(b)(2)(A)(i) (The Conservator "immediately succeed[s] to . . . all rights,

---

[3]   Similarly, another of the articles Plaintiff cites—the law-student comment William E. Eye, Comment, *Are Fannie Mae and Freddie Mac State Actors? State Action, Due Process, & Nonjudicial Foreclosure*—recites that the "[c]ourts that have considered this issue in recent years have almost unanimously found that Fannie and Freddie do not satisfy the *Lebron* test," then advocates for "a novel approach to determin[ing] whether Fannie and Freddie are state actors." 65 Emory L.J. 107, 109-10 (2015). Plaintiff also claims an article published in *2010*—Grant S. Nelson, *Confronting the Mortgage Meltdown: A Brief for the Federalization of State Mortgage Foreclosure Law*, 37 Pepp. L. Rev. 583 (2010)—somehow "criticize[s]" decisions issued years later. Opp. at 4-5 n.3. The early, oft-cited district court decision in *Herron*, for example, was issued in *2012*. *See Herron v. Fannie Mae*, 857 F. Supp. 2d 87 (D.D.C. 2012) ("*Herron I*"). Plaintiff's inversion of the timing was undoubtedly an honest mistake, but it shows how tenuous Plaintiff's argument is.

1  titles, powers, and privileges of the regulated entity" in conservatorship.).  As the D.C. Circuit

2  recently explained, in its capacity as Conservator, FHFA is not a government actor for

3  constitutional purposes because it "step[s] into Fannie Mae's private shoes," thus becoming a

4  private actor itself for such purpose.  *Herron v. Fannie Mae*, 861 F.3d 160, 169 (D.C. Cir. 2017)

5  ("*Herron II*") (citing *Perry Capital LLC v. Mnuchin*, 848 F.3d 1072, 1103 & n.22 (D.C. Cir.

6  2017); *Meridian Invs., Inc. v. Freddie Mac*, 855 F.3d 573, 579 (4th Cir. 2017)); *see also Freddie*

7  *Mac v. Shamoon*, 922 F. Supp. 2d 641, 645 (E.D. Mich. 2013) ("FHFA, as conservator, merely

8  'steps into the shoes' of Freddie Mac, a private corporation."); *May v. Wells Fargo Bank, NA.*,

9  No. 4:11-3516, 2013 WL 3207511, at \*5 (S.D. Tex. June 24, 2013) (agreeing that "FHFA as

10  conservator 'stepped into Fannie Mae's *private* role'"); *Syriani v. Freddie Mac Multiclass*

11  *Certificates, Series 3365*, No. CV 12-3035, 2012 WL 6200251, at \*4 (C.D. Cal. July 10, 2012)

12  (same).

13      Plaintiff attempts to avoid this on-point precedent by arguing that the "stepping into

14  shoes" metaphor is not "applicable."  Opp. at 7-8.  But Plaintiff offers no support for her view,

15  and as the cases cited above confirm, federal courts have recognized that the "stepping into

16  shoes" metaphor is indeed applicable to constitutional claims concerning FHFA when it acts as

17  Conservator, as it did here.  *Parra v. Fannie Mae*, No. 13-cv-4031, 2013 WL 5638824, at \*3

18  (C.D. Cal. Oct. 16, 2013) ("FHFA, which took over as Fannie Mae's conservator, also does not

19  qualify as a government actor" for purposes of the plaintiff's Fifth Amendment claim.); *Fannie*

20  *Mae v. Mandry*, No. 12-cv-13236, 2013 WL 687056, at \*5 (E.D. Mich. Feb. 26, 2013) ("Fannie

21  Mae and FHFA are not government actors that can be held liable for [a] Fifth Amendment due

22  process violation."); *Dias v. Fannie Mae*, 990 F. Supp. 2d 1042, 1061 (D. Haw. 2013)

23  ("Similarly, the FHFA, which took over as Fannie Mae's conservator, also does not qualify as a

24  government actor.").

25      Federal court precedent for other financial-institution conservators and receivers

26  operating under substantially the same statutory structure confirms the point.  For example, the

27  Fifth Circuit has held that when acting as receiver for a failed bank, the Resolution Trust

28  Corporation ("RTC") was not a government actor for constitutional purposes.  *United States v.*

1  *Beszborn*, 21 F.3d 62, 68 (5th Cir. 1994).  In *Beszborn*, the RTC receiver successfully pursued an

2  award of punitive damages against former officers and directors of the bank.  *Id.* at 67.  Later,

3  when the Department of Justice brought criminal charges against the same individuals

4  concerning the same conduct, they argued that the Double Jeopardy Clause barred the

5  prosecution because the RTC was part of the government, making DOJ's prosecution a

6  constitutionally barred second sovereign attempt to punish the same wrong.  The Fifth Circuit

7  rejected that argument, explaining that "[t]he RTC as receiver of an insolvent financial institution

8  stands in the shoes of the bank" and concluding that "the RTC stands as a private, non-

9  governmental entity, and is not the Government for purpose of the Double Jeopardy Clause."

10  *Id.*; *see also United States v. Heffner*, 85 F.3d 435, 439 (9th Cir. 1996) (agreeing with *Beszborn*);

11  *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 503-04 (3d Cir. 2017) (applying

12  *Beszborn* in holding that the Small Business Administration, acting as a receiver, "did not qualify

13  as the Government").

14  Despite Plaintiff's suggestion to the contrary, Defendants do not argue that "when the

15  FDIC—or any other federal entity—is a receiver [and steps into the shoes of the private entity],

16  the federal entity becomes a private actor for *all purposes*."  Opp. at 8 (citing *O'Melveny*, 512

17  U.S. 79) (emphasis added).[4]  Indeed, "an entity may be governmental for one purpose and

18  nongovernmental for another."  *Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1206 (D.C. Cir.

19  1993); *U.S. ex rel. Adams v. Aurora Loan Servs., Inc.*, 813 F.3d 1259, 1261 (9th Cir. 2016).  But

20  when that purpose is the exercise of a purely private, contractual right of an entity in

21  conservatorship (i.e., the power of sale in a mortgage), there is no question FHFA is not

22  considered governmental for purposes of a constitutional claim, as the cases described above

23  confirm.

24  Indeed, Plaintiff identifies no case in which any court has ever deemed any federal

25  financial-institution conservator or receiver to be a government actor for constitutional purposes.

26

27  [4]      Plaintiff's argument, notably, asks this Court to accept the opposite, untenable extreme.
According to Plaintiff, FHFA is a federal agency and is therefore a governmental actor in all
28  instances, regardless of the capacity in which FHFA acts.

1    Rather, she cites to two cases that do not present the issue at all, but instead involve purely

2    statutory questions governed by a completely different analysis.  Opp. at 6, 10 (citing *FHFA v.*

3    *Countrywide Fin. Corp.*, 900 F. Supp. 2d 1055 (C.D. Cal. 2012), and *FHFA v. Royal Bank of*

4    *Scotland Grp. PLC*, No. 3:11-cv-01383, 2012 WL 3580522 (D. Conn. Aug. 17, 2012)).

5    Underscoring the point, each of those cases acknowledges the district court decision in *Herron I*

6    (the D.C. Circuit had not yet ruled), and expressly indicates that its ruling does not conflict with

7    *Herron I.*

8        In *Countrywide*, the court concluded that an ambiguous statute of limitations provision

9    governing litigation brought by the Conservator should be interpreted in FHFA's favor.  900 F.

10   Supp. 2d at 1066.  The court decided the issue as a matter of statutory interpretation, discerning

11   Congress's intent from the interplay between various provisions of HERA.  *Id.*  The *Countrywide*

12   court plainly considered the question it faced to be different from that presented here, noting that

13   it would reach the same conclusion "regardless of whether the FHFA is a government [actor] for

14   purpose of [constitutional] claims."  *Id.* at 1066 n.9 (citing *Herron I*, 857 F. Supp. 2d 87).

15       In *Royal Bank*, the court held that FHFA, in its capacity as Conservator, was not subject

16   to a mandatory discovery stay under the Private Securities Litigation Reform Act ("PSLRA").

17   The court again based its decision on statutory-interpretation principles, considering the purpose

18   of the statute, reasoning that "the concerns motivating Congress in enacting the PSLRA are not

19   present here," and concluding that FHFA's case was not a "private action" as that term is used in

20   the PSLRA.  *Royal Bank*, 2012 WL 3580522, at *2.  Confirming that it was not applying the

21   constitutional principles at issue here, the *Royal Bank* court denied a motion to reconsider its

22   ruling after the *Herron I* decision was issued, emphasizing the differing legal context of the two

23   holdings:  "*Herron* does not address the meaning or scope of the term 'private action' as used by

24   Congress in the PSLRA.  Thus, *Herron* does not alter the court's conclusion that where FHFA is

25   'bringing this action pursuant to its Congressional authorization under HERA,' the action 'is not

26   a private action under the PSLRA.'"  Order re Defendants' Motion for Reconsideration at 3,

27   *Royal Bank*, No. 11-CV-01383 (D. Conn. Sept. 30, 2013), ECF No. 201.  The *Royal Bank*

28   argument has been raised in at least one other foreclosure-related case, and the court rejected it

- 5 -

1    *sub silentio* in holding that FHFA and Fannie Mae are not government actors subject to the

2    plaintiff's due process claim.[5]  Thus, *Countrywide* and *Royal Bank* do not support Plaintiff's

3    argument.

4         Plaintiff also cites to an appellate brief FHFA filed in another Second Circuit case,

5    similar to *Royal Bank*, that also did not involve a constitutional claim.  Opp. at 7 (quoting Brief

6    at 56 n.15, *FHFA v. UBS Americas Inc.*, No. 12-3207 (2d Cir. Oct. 25, 2012)).  Plaintiff

7    overlooks the fact that in the very quote she presents, FHFA expressly limited its analysis to

8    "purposes of statutory interpretation."  *Id.*  Therefore, contrary to Plaintiff's argument, FHFA did

9    not "concede[]" anything relevant to this case.  Unlike *UBS*, *Royal Bank*, and *Countrywide*, this

10   case involves a question of constitutional status, not one of "statutory interpretation."[6]

11        Plaintiff's assertion that the Supreme Court's ruling in *FDIC v. Meyer* decides this issue

12   is also wrong.  Opp. at 8-10 (citing 510 U.S. 471 (1994)).  *Meyer* does not stand for the

13   proposition that FHFA, as Conservator, is a government actor subject to constitutional

14   constraints.  Instead, *Meyer* addressed the jurisdictional issue of immunity.  510 U.S. at 475, 479.

15   In *Meyer*, the Supreme Court held that FDIC's sue-and-be-sued clause waived its sovereign

16   immunity for purposes of plaintiff's due process *Bivens* claim.  But that waiver did not

17   automatically make FDIC subject to plaintiff's claim.  *Id.* at 483.  Indeed, as Plaintiff

18   acknowledges, the Supreme Court ultimately held that FDIC was *not* subject to the due process

19

20   [5]    Response to Motion to Dismiss at 13-16, *Fannie Mae v. Mandry*, No. 12-cv-13236,
21   (E.D. Mich. Oct. 12, 2012), 2012 WL 5996537; *Mandry*, No. 12-cv-13236, 2013 WL 687056, at
     *1 (court opinion).

22   [6]    It is worth noting that courts applying statutory-interpretation principles often hold that
23   federal financial-institution receivers and conservators are *not* the government for certain
     statutory purposes.  *See, e.g.*, *Schock v. FDIC*, 118 F. Supp. 2d 165, 169 (D.R.I. 2000) (FDIC as
24   receiver is not a government body subject to an Equal Access to Justice Act claim, because
     "[w]hen the FDIC acts in its capacity as a receiver, its main objective is not to carry out
25   governmental policy."), *aff'd on other grounds*, 254 F.3d 1 (1st Cir. 2001); *AG Route Seven
     P'ship v. United States*, 57 Fed. Cl. 521, 534 (2003) (FDIC receiver not the government for
26   Tucker Act purposes: "In its capacity as receiver . . . FDIC is merely standing in the shoes, and
     thus asserting the claims, of the defunct thrift. . . .  Consequently, the FDIC's attendant role
27   herein is tantamount to that of a private party, and not the government *per se*."); *Ambase Corp. v.
     United States*, 61 Fed. Cl. 794, 796-97 (Fed. Cl. 2004) (similar: "[T]he FDIC receiver could
28   intervene *against* the United States.  Under prevailing constitutional law, the FDIC receiver
     therefore cannot *be* the government as well.").

claim.  Opp. at 9.  Here, FHFA has not argued that, as Conservator, it is immune from Plaintiff's due process claim or that this Court lacks jurisdiction.  Instead, FHFA argues that as a matter of law, Plaintiff's claim fails.  Plaintiff's "reasoning conflates two 'analytically distinct' inquiries. The first inquiry is whether there has been a waiver of sovereign immunity.  If there has been such a waiver . . . , the second inquiry comes into play—that is, whether the source of substantive law upon which the claimant relies provides an avenue for relief."  *Meyer*, 510 U.S. at 484.  Here, because the FHFA as Conservator is not a government actor for constitutional purposes, the avenue Plaintiff has selected is closed.

As the Ninth Circuit has confirmed, *Meyer* "did not purport to determine the status of the FDIC when . . . taking over a failed bank as receiver," *United States v. Ely*, 142 F.3d 1113, 1121 (9th Cir. 1998), nor did it address whether a conservatorship or receivership transforms an otherwise private actor into the government for purposes of constitutional claims.  Plaintiff relies heavily on *Meyer* because it is a Supreme Court decision, but the decision does not support Plaintiff's argument—nor does it justify a different conclusion from all prior courts that have addressed this issue, all of which would have been bound by *Meyer* if it applied to the question presented.

FHFA as Conservator is not a government actor subject to constitutional claims.

## II.   FANNIE MAE IS NOT A GOVERNMENT ACTOR FOR PURPOSES OF CONSTITUTIONAL CLAIMS.

Neither is Fannie Mae a government actor for purposes of this case.  As Defendants explained in their Motion, *Lebron* controls the analysis of whether Fannie Mae—in or out of FHFA conservatorship—is a government actor for purposes of Plaintiff's constitutional claim. Under *Lebron*, Fannie Mae is not a government actor because the government lacks permanent structural control over Fannie Mae.  FHFA's control as Conservator (even if assumed incorrectly to be governmental control) is temporary rather than permanent.

Plaintiff responds that, contrary to the decisions of every federal court to consider the issue, Fannie Mae is a government actor under *Lebron* because FHFA's conservatorship of Fannie Mae has no predetermined endpoint, and therefore purportedly constitutes permanent government control.  Opp. at 11-19.  Plaintiff is wrong once again.  *Lebron* and the numerous

1    decisions on the issue make clear that while FHFA's control over Fannie Mae has no

2    predetermined endpoint and is therefore *indefinite*, that does not constitute *permanent*

3    government control for purposes of *Lebron*.  As the D.C. Circuit explained, FHFA's "indefinite

4    but temporary control does not transform Fannie Mae into a government actor." *Herron II*, 861

5    F.3d at 169.[7]

6          Plaintiff also argues that Treasury's financial support to Fannie Mae converts Fannie Mae

7    into a government actor.  Opp. at 22-25.  That too is wrong.  It is common for the government to

8    invest in financial institutions during a financial crisis without the financial institution becoming

9    a government actor for constitutional purposes.  Treasury's financial support is neither

10   permanent nor indicative of structural control.  Plaintiff's arguments to the contrary lack merit.

11
12        **A.**    **FHFA's Conservatorship Does Not Establish Permanent Government Control of Fannie Mae Under *Lebron*.**

13          Under *Lebron*, "permanency is 'a necessary condition precedent' to consider a

14   government-created corporation part of the government." *Herron II*, 861 F.3d at 167 (quoting

15   *Sprauve v. W. Indian Co.*, 799 F.3d 226, 233 n.8 (3d Cir. 2015)).  "There is nothing in [HERA]

16   that makes [FHFA's] conservatorship permanent." *In re Kapla*, 485 B.R. 136, 152 (Bankr. E.D.

17   Mich. 2012).  Rather, the conservatorship is temporary.  Indeed, HERA mandates that FHFA

18   reorganize or rehabilitate Fannie Mae or wind up its affairs; either circumstance would bring the

19   conservatorship to a close at some future date.  12 U.S.C. § 4617(a)(2).  Plaintiff's argument that

20   there should be a "specified end date" or "an automatic termination" of the conservatorship to

21   make it temporary, Opp. at 16-17, is incorrect and not consistent with *Lebron*.  *Lebron v. Nat'l*

---

22    [7]    *See also Rubin v. Fannie Mae*, 587 F. App'x 273, 275 (6th Cir. 2014) ("Congress, by statute, empowered the FHFA to become conservator for Fannie Mae for [an] inherently

23   temporary purpose."); *Matveychuk v. One W. Bank, FSB*, No. 1:13-CV-3464, 2016 WL 4059681, at *3 (N.D. Ga. Jan. 28, 2016) ("Because the FHFA lacks permanent control over Fannie Mae,

24   Fannie Mae is not a state actor . . . ."); *Dias*, 990 F. Supp. 2d at 1062 ("FHFA's conservatorship does not create the type of permanent control required under *Lebron*."); *Bernard v. Fannie Mae*,

25   No. 12-14680, 2013 WL 1282016, at *5 (E.D. Mich. Mar. 27, 2013) ("[T]he FHFA's conservatorship does not create the type of permanent control required under *Lebron*."); *May*,

26   2013 WL 3207511, at *4 (same); *see also Matter of: S.E. James & Co*., B-415733, 2018 WL 834433, at *3 (Comp. Gen. Feb. 7, 2018) (ruling that "Fannie Mae's and Freddie Mac's status

27   remains as non-federal agencies for purposes of [the Federal Property and Administrative Services Act of 1949.]  [T]he fact that FHFA has the statutory responsibility as conservator to

28   regulate and supervise these entities does not mean that the entities are federal agencies.").

1    *R.R. Passenger Corp.*, 513 U.S. 374, 399 (1994).  Even if conservatorship is assumed to embody

2    *government* control—it does not, *see supra* at 2-7—*Lebron* makes clear that *indefinite*

3    government control is not *permanent* government control.  Rather, permanent government

4    control requires structural elements that cannot be altered other than by act of Congress, such as

5    statutory charter provisions entitling the President to appoint a majority of the entity's governing

6    body.  *Lebron*, 513 U.S. at 397.

7        Indeed, the federal courts that have addressed this issue have applied *Lebron* and found

8    that the Enterprises are not government actors for purposes of constitutional claims because the

9    government lacks such permanent, structural control.  *See* Appendix A.  For example, the D.C.

10    Circuit held that "the conservatorship over Fannie Mae did not create the type of permanent

11    government control that is required under *Lebron*."  *Herron II*, 861 F.3d at 169.  Similarly, the

12    Sixth Circuit held that "Congress, by statute, empowered the FHFA to become conservator for

13    Fannie Mae for the limited purpose of 'reorganizing, rehabilitating, or winding up [its] affairs.'

14    . . . This is an inherently temporary purpose."  *Rubin*, 587 F. App'x at 275 (alteration in original)

15    (citation omitted);  *accord Adams*, 813 F.3d at 1261 ("[A]ssuming that *Lebron* outlines the

16    correct analytical framework for False Claims Act purposes, relators' argument still fails,

17    because relators do not allege that the conservatorship represents the federal government's

18    retention of permanent authority to control Fannie Mae and Freddie Mac.");[8] *Meridian Invs.,*

19    *Inc.*, 855 F.3d at 579 (applying *Lebron* and concluding that "the government does not exert

20    control over Freddie Mac such that it loses its private-party status").  Thus, when and how the

21    conservatorship terminates is not relevant to the Court's analysis.[9]

22

23    [8]    Plaintiff contrasts the *absence* of allegations of permanent control in *Adams* with the *presence* of such allegations—albeit unsupported and contrary to law—here.  Opp. at 4 n.2.  But what *Adams* teaches is simply that permanent government control has always been and remains a

24    required element of the *Lebron* test, a proposition Plaintiff disputes elsewhere in her brief.  *See*

25    Opp. at 19-20 (arguing that "the gravamen of the *Lebron* test is the degree of government control, not the duration.").

26    [9]    Consequently, that "FHFA's control over the GSEs has already lasted over nine years," Opp. at 16, does not make the conservatorship permanent.  FDIC receiverships, which operate

27    under a materially identical legal structure and have never been held to convert an otherwise private financial institution into a government actor, have an *average* duration of 8.7 years.

28    FDIC OIG, *Receivership Termination Activity* 2 (Sept. 20, 2002), https://www.fdicoig.gov/sites/default/files/publications/02-032.pdf.  ("The 168 receiverships

(Footnote Cont'd on Following Page)

1    Nevertheless, Plaintiff argues it is "illogical and inconsistent with the reasoning of

2 *Lebron*" for the Conservator's control over Fannie Mae to be indefinite but remain temporary.

3 Opp. at 17-18.  This is because Plaintiff misunderstands *Lebron* and the Supreme Court's

4 endorsement, in that case, of the *Regional Rail Reorganization Act Cases*—an earlier decision in

5 which the Supreme Court held that Conrail, another federally supported railway subject to

6 extensive government control, was *not* a federal actor because the government's control was

7 indefinite rather than structurally permanent:

8    [Amtrak] also invokes . . . the *Regional Rail Reorganization Act Cases* . .

9    ., which found . . . Conrail[] not to be a federal instrumentality, despite the
     President's power to appoint, directly or indirectly, 8 of its 15 directors . . .

10   . But we specifically observed in that case that . . . *'full voting control . . .
     will shift to the shareholders if federal obligations fall below 50% of*

11   *Conrail's indebtedness*.'

12 *Lebron*, 513 U.S. at 399 (citing *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 152

13 (1974) (emphasis added)).  Notably, in *Regional Rail*, voting control would shift to the Conrail

14 shareholders *only if* federal financial support fell below a certain level—meaning that even

15 though the government's control over Conrail had no obvious or fixed end date, control could

16 shift back to the shareholders without further legislation.[10]  Thus, even though Conrail did not

17 have "a provision automatically terminating the government's control" at some predetermined

18 time, Opp. at 17, the government's control, though functionally complete, was only indefinite

19 and temporary, not permanent.

20 ――――――――――――

21 (Footnote Cont'd From Previous Page)
active as of January 1, 2002 had an average age of 8.7 years.").  Moreover, that FHFA by statute
can appoint itself as receiver of Fannie Mae someday, Opp. at 16 n.7 (citing 12 U.S.C.

22 § 4617(a)(4)(D)), does not establish *current* permanent control.

23 [10]    As a practical matter, and though the Supreme Court obviously could not have known it
at the time of the *Regional Rail* decision, the government's control over Conrail lasted

24 approximately 13 years.  *Regional Rail*, 419 U.S. at 111; James Sterngold, *85% U.S. Stake in
Conrail Sold for $1.6 Billion*, N.Y. Times (Mar. 27, 1987); http://www.nytimes.com/1987/03/27/

25 business/85-us-stake-in-conrail-sold-for-1.6-billion.html?scp=1&sq=conrail&st=nyt.  That is
roughly three years longer than Fannie Mae has been in conservatorship to date, yet no decision

26 indicates any court ever considered that lengthy but inherently indefinite term of government
control sufficient to convert Conrail into a government actor.  *See Morin v. Consol. Rail Corp*.,

27 810 F.2d 720, 723 (7th Cir. 1987) (agreeing "with the Second Circuit that Conrail . . . is not an
entity of the federal government for purposes of the due process clause" even after 13 years of

28 government funding).

- 10 -

The Supreme Court distinguished its holding that Conrail was not a government actor from its holding that Amtrak was a government actor on the ground that the government's authority to appoint the majority of Conrail's board of directors was *contingent* on the continuation of federal financial support rather than baked into Conrail's organic statute. *Lebron*, 513 U.S. at 399.  Even though there was no certainty as to when the federal financial support would end, and therefore no certainty whether (and, if so, when) voting control would *ever* shift back to the Conrail shareholders, the Supreme Court reaffirmed its holding that Conrail was *not* a government actor in the context of a constitutional claim.  *Id.*  Notwithstanding that the government was able to exercise control over Conrail's board of directors, the Supreme Court explained that the indefinite duration of that government control meant that it did not constitute permanent control required by *Lebron*.  Simply put, the government's authority to appoint the board of directors of Conrail could cease without an act of Congress, whereas the government's authority to appoint Amtrak's board could not.

Nor is it plausible to argue that Conrail's financial prospects somehow made its emergence from government control more likely or foreseeable than Fannie Mae's exit from conservatorship appears today.  Indeed, when the Supreme Court determined that Conrail was not a federal actor in 1974, that corporation's economic outlook was every bit as bleak—and its dependence on federal support as great—as Fannie Mae's has ever been:

> The record makes abundantly clear what all the parties concede, that *Conrail, though dubbed "a for-profit corporation" . . . shows no prospect of being an enterprise operating on a profitable basis.*  Penn Central losses between June 21, 1970, and December 31, 1973, were $851 million, and the Reorganization Court . . . found that reorganization on an income basis was not possible.  *The values that ride on today's decisions are therefore not based on the prospect of future profitable operations.*

*Regional Rail*, 419 U.S. at 163-64 (Douglas, J., dissenting) (emphases added).

To the same effect, the Supreme Court also identified "a private corporation whose stock comes into federal ownership" as an example to illustrate the *absence* of permanent government control over the corporation.  *Lebron*, 513 U.S. at 398 ("Amtrak is not merely in the *temporary* control of the Government (*as a private corporation whose stock comes into federal ownership*

1    *might be*." (emphases added)).  Thus, the Supreme Court itself has unequivocally confirmed that

2    indefinite control is not permanent control.

3        Seeking to neutralize this portion of *Lebron*, Plaintiff points the Court to dicta describing

4    the Panama Railroad Company, characterizing the passage as indicating that the government's

5    "ownership of [that company's] stock . . . confer[red] sufficient control that the . . . company

6    *qualified as a government actor*."  Opp. at 24 (emphasis added).  Plaintiff appears to have made

7    another honest-but-telling mistake.  *See supra* n.3.  *Lebron*'s "detailed recitation of 'the long

8    history of corporations created and participated in by the United States,'" *Sprauve*, 799 F.3d at

9    230 (quoting *Lebron*, 513 U.S. at 386), never indicates whether the Panama Railroad Company

10   ever was, or should have been, deemed a government actor.  *See Posey v. Tenn. Valley Auth.*, 93

11   F.2d 726, 727 (5th Cir. 1937) (distinguishing Panama Railroad Company, as "a corporation

12   created under the general laws of some state or territory, [and] whose stock the United States

13   happen[s] to own," from government-created and controlled corporations that are "plainly . . .

14   government agenc[ies]").

15       Plaintiff has no persuasive answer to the relevant portions of *Lebron*, or the more than 30

16   cases applying *Lebron* in holding the Enterprises are not government actors for constitutional

17   purposes.  Instead, Plaintiff asks this Court to look to other, off-point authorities to define an

18   "indefinite time period" to determine if FHFA's conservatorship is temporary or permanent.

19   Opp. at 15-16.  But it is illogical for Plaintiff to ask this Court to look to authorities "[i]n other

20   contexts," like employment and disability law, Opp. at 15, when *Lebron* and the more than 30

21   cases following it are the controlling authority on, and clearly address, the very issue of this case.

22       For the same reason, the Court should not accept Plaintiff's invitation to rely on

23   dictionary definitions when there is case law directly on point.  "[C]ase law [is] a preferable

24   source of authority" when "the plaintiffs' use of a . . . dictionary definition in support of their

25   argument [is] inconsistent with the existing case law."  *Basinger v. Wal-Mart Stores, Inc.*, No.

26   98-334-P-H, 1999 WL 33117106, at *4 n.5 (D. Me. Jan. 27, 1999).  Nevertheless, even under the

27   definition Plaintiff cites, FHFA's conservatorship remains "temporary," which Plaintiff's

28   dictionary equates with "lasting for a limited time."  *See* Opp. at 15 (citing Merriam Webster

1   online dictionary).  That a circumstance's duration is limited does not mean it has a "definite

2   temporal limitation," i.e., a "specified end date," as Plaintiff argues.  Opp. at 15-16.  For

3   example, we are all on this earth for only "a limited time," but few if any of us know when our

4   time will conclude; our lifetimes, though indefinite, are surely temporary.[11]  Similarly, while no

5   one can know today exactly when the Fannie Mae conservatorship will end, it is temporary

6   rather than permanent in the *Lebron* sense; not even Plaintiff argues that a new legislative

7   enactment is necessary to end it.  Perhaps anticipating the point, Plaintiff observes that "nothing

8   is permanent" in a "strict" philosophical "sense."  Opp. at 18.  That tautological assertion proves

9   too much; it conflicts directly with the test the Supreme Court prescribed in *Lebron*, which

10  depends on the premise that some things—such as the Government's statutorily mandated

11  structural control over Amtrak—*are* permanent in a different, but equally strict, *legal* sense.

12          Plaintiff also asks this Court to look to three cases for the proposition that because

13  permanent conservatorships exist in other contexts, FHFA's conservatorship must be permanent.

14  Opp. at 15 (citing *Mitchell v. Ensor*, 412 F.2d 155, 158 (1969); *United States v. Peelle Co.*, 224

15  F.2d 667, 669 (2d Cir. 1955); *Propper v. Clark*, 337 U.S. 472, 476 (1949)).  These cases do not

16  involve federal financial-institution conservatorships or receiverships, or any other

17  conservatorship or receivership imposed under a similar statutory structure, and they do not

18  evaluate whether the very different conservatorships at issue were government actors for

19  constitutional purposes.  Plaintiff offers no reason why these cases should apply here, and there

20  is none.  Defendants need not establish that no conservatorship can ever be permanent in order to

21  prevail.  What is at issue are the conservatorships of financial institutions—and they are

22  inherently temporary.  Indeed, a financial-institution conservatorship is usually directed toward

23  the eventual resumption of the institution's private business activity.  As one court explained, "a

24

25  _____

    [11]       Indeed, the dictionary Plaintiff cites confirms that *indefinite* circumstances fit well within
26  the definition of "temporary"—Merriam Webster illustrates its definition with the quotation
    "Investors are weighing whether the sharp swings this week are the start of a deeper correction or
    just a *temporary* bump in the nine-year bull market."  Merriam Webster online dictionary (entry
27  for "temporary"), last visited Feb. 23, 2018 (citation omitted, emphasis in original).  As of today,
    no one can know when recent market volatility will end; the circumstance is paradigmatically
28  indefinite, yet Merriam Webster deems it quintessentially "temporary."

1    conservator is a person or entity, including a government agency, appointed by a regulatory

2    authority to operate a troubled financial institution in an effort to conserve, manage, and protect

3    the troubled institution's assets until the institution has stabilized or has been closed by the

4    chartering authority." *Ameristar Fin. Servicing Co., LLC v. United States*, 75 Fed. Cl. 807, 808

5    n.3 (2007) (internal quotation marks and citations omitted).

6         Plaintiff further argues that conservatorships cannot be inherently temporary because

7    "Congress could establish conservatorship entities completely controlled by the government and

8    with indefinite duration as a means of avoiding compliance with the United States Constitution."

9    Opp. at 14.  First, Plaintiff's policy argument cannot negate the legal requirements under *Lebron*.

10   Second, Plaintiff's argument fails because the premise is wrong and misconstrues the nature of

11   FHFA's conservatorship and of conservatorships and receiverships generally.  Indeed, Plaintiff

12   disregards the policy supporting conservatorships.  The FDIC and FHFA are authorized by

13   statute to place a failing financial institution in conservatorship or receivership to facilitate their

14   safety and soundness.  After doing so, these agencies step into the shoes of the regulated entity as

15   Conservators and do not control the regulated entities as part of the government for purposes of

16   constitutional claims.  *See supra* at 2-7.

17        Lastly, Plaintiff contends that *Lebron* requires courts to look beyond Congressional

18   "labels," such as a "conservatorship," when determining whether a corporation is a government

19   actor for purposes of constitutional claims.  Opp. at 13-14 & n.6.  The discussion in *Lebron* to

20   which Plaintiff refers, however, merely explains that Congress's pronouncement that a

21   corporation is not a government actor is not dispositive of that entity's status for constitutional

22   claims.  For example, in *Lebron*, the Supreme Court explained that Congress could not avoid the

23   restrictions of the Fourth Amendment by issuing a pronouncement that the Federal Bureau of

24   Investigation was not a government actor.  513 U.S. at 392-93.  In any event, the more than 30

25   federal decisions to reject Plaintiff's claim have not relied on a Congressional pronouncement

26   regarding Fannie Mae's status post-conservatorship.  *See* Appendix A.  Indeed, no such

27   Congressional pronouncement exists.  Instead, the unanimous federal decisions to reject

28

1  Plaintiff's argument have examined whether the government has "retain[ed] for itself

2  permanent," structural control over Fannie Mae, as required by *Lebron*.  513 U.S. at 400.

3      **B.      Treasury's Financial Support of the Fannie Mae Conservatorship Does Not
              Establish Permanent Government Control Under *Lebron*.**

4

5      Plaintiff is likewise incorrect in asserting that the Treasury's financial support of Fannie

6  Mae establishes that Fannie Mae is a government actor for constitutional purposes.  Opp. at 22-

7  25.  As explained in Defendants' Opening Brief, Mot. at 9-10, Treasury's investment in Fannie

8  Mae is irrelevant to Fannie Mae's status for constitutional purposes because the financial support

9  does not give Treasury permanent control over Fannie Mae.  *See Lebron*, 513 U.S. at 398

10  (characterizing a private corporation "whose stock comes into federal ownership" as only "in the

11  temporary control of the Government").

12      Indeed, it is common for the government (through Treasury and FDIC) to invest in

13  troubled financial institutions to support the broader financial system.  In prior financial crises,

14  the government purchased equity of, and provided substantial financial support to, troubled

15  banks, often under detailed contracts.  *See, e.g.*, *Holland v. United States*, 75 Fed. Cl. 483 (2007);

16  *Caroline Hunt Trust Estate v. United States*, 470 F.3d 1044 (Fed. Cir. 2006); *FDIC v. Morley*,

17  867 F.2d 1381 (11th Cir. 1989).  This financial support does not convert the subject institutions

18  into government actors.  *See, e.g.*, *Wiggins v. JP Morgan Chase Bank*, 2:14-cv-11103, 2015 WL

19  868933 (S.D.W.V. Feb. 27, 2015) (recipient of TARP funds not a government actor).[12]  Despite

20  arguing that the federal support provided to the Fannie Mae conservatorship makes Fannie Mae a

21  government actor, Plaintiff identifies no case—because there is none—in which a private

22  financial institution has been deemed a government actor by virtue of accepting federal

23  assistance while in conservatorship or receivership.

24  [12]      Similar to Treasury's financial support of the Fannie Mae conservatorship, "Treasury
         used the TARP authority to make investments loans and asset guarantees and purchases in or

25  from a range of financial institutions.  In exchange for this assistance, Treasury, on behalf of the
         taxpayer, received financial instruments including equity securities (preferred stock, common

26  stock and warrants) . . . ." U.S. Dep't of the Treasury, *Where Did The Money Go?*(Nov. 15,
         2016, 2:02 PM),  https://www.treasury.gov/initiatives/financial-stability/about-tarp/Pages/where-

27  did-the-money-go.aspx.

28

1    *Lebron* and *Regional Rail* are dispositive here.  *Lebron* makes clear that even if

2    government financial support results in the government retaining a controlling interest in a

3    corporation for an indefinite (but non-permanent) period, that support is insufficient to convert

4    the corporation into a government actor.  513 U.S. at 399 (reaffirming the holding in *Regional*

5    *Rail* that Conrail, a private corporation, was not converted into a government actor despite the

6    government's considerable support as guarantor).  This is so because "when the government

7    acquires an ownership interest in a corporation, it acts—and is treated—as any other

8    shareholder."  *Meridian Invs., Inc.*, 855 F.3d at 579 (citing *Lebron*, 513 U.S. at 398, and *Bank of*

9    *U.S. v. Planters' Bank of Ga.*, 22 U.S. 904, 907 (1824)).

10   Moreover, Plaintiff is incorrect that "the *Lebron* court actually counted the directors of

11   Amtrak that the federal government elected by virtue of its present holding of Amtrak's preferred

12   stock in finding Amtrak was a government actor."  Opp. at 23.  The Supreme Court only

13   analyzed whether Amtrak's governance structure *under its organic statute* reflected permanent

14   government control; it did, because the chartering statute allowed the government to appoint six

15   of the nine directors.  *Lebron*, 513 U.S. at 385.  Because Amtrak was *always* under permanent

16   government control, the Court could not and did not ground its decision that Amtrak was a

17   government actor on any aspect of the incremental control the government gained through its

18   financial assistance arrangement.  That temporary arrangement was superfluous to the

19   government's pre-existing permanent control, and therefore irrelevant—the Supreme Court made

20   no mention in its analysis of the additional appointment power the government gained by

21   acquiring Amtrak's stock.  *Id.* at 397 ("As we have described, six of the corporation's eight

22   externally named directors (the ninth is named by a majority of the board itself) are appointed

23   directly by the President of the United States . . . .").

24   Here, Fannie Mae's charter does not grant the government permanent authority to appoint

25   Fannie Mae's directors—"The Federal National Mortgage Association shall have a board of

26   directors, which shall consist of 13 persons . . . who shall be elected annually by the common

27   stockholders."  12 U.S.C. § 1723(b).  Moreover, in applying *Lebron*, the court in *Herron I*

28

rejected Plaintiff's argument that Treasury's ownership of Fannie Mae's stock gives it permanent control over Fannie Mae:

> The Stock Agreement did not give the government permanent control over Fannie Mae. The Stock Agreement provided Treasury with a warrant to purchase 79.9% of the total shares of Fannie Mae common stock outstanding on the date of exercise at a nominal price. . . .  As of this date, Treasury has not exercised this warrant.  The Stock Agreement also required Treasury to provide funding to Fannie Mae to ensure a positive net worth in exchange for shares of Senior Preferred Stock that pay a certain dividend. . . .  Senior Preferred Stock conferred no voting rights. . . .  Thus, *Treasury's warrant to purchase common stock and its ownership of non-voting Senior Preferred Stock do not give the United States permanent control over Fannie Mae and do not make Fannie Mae a government entity under* Lebron.

857 F. Supp. 2d at 96 (emphasis added).  That conclusion was plainly correct; as noted above, *Lebron* specifically identifies "a private corporation whose stock comes into federal ownership," as *lacking* permanent government control.  *Lebron*, 513 U.S. at 398.

In any event, Treasury does not own common stock and has not obtained any voting rights through its purchase of Senior Preferred Stock.  Thus, according to Plaintiff's own reasoning, Treasury's financial support does not transform Fannie Mae into a government entity because Treasury's "ownership of shares [does not] confer[] a controlling interest over the operations of [Fannie Mae]"—much less a permanent controlling interest.  Opp. at 25. Moreover, Plaintiff concedes that Fannie Mae's "directors are currently appointed by FHFA as [C]onservator," and that Treasury could potentially have authority to appoint Fannie Mae's directors (if it purchases common stock) when the conservatorship *ends*.  Opp. at 25.  Plaintiff cannot then argue that Fannie Mae is *currently* under Treasury's permanent control based on Treasury's hypothetical ability to appoint Fannie Mae's directors *after* conservatorship.

Treasury's financial support does not amount to permanent government control under *Lebron* and does not impose government-actor status onto Fannie Mae.

**III.    *LEBRON* CONTROLS THESE ISSUES AND SUBSEQUENT DECISIONS DO NOT UNDERMINE *LEBRON*'S PERMANENCY REQUIREMENT.**

Unable to identify a single, supportive decision involving a federal financial-institution conservatorship or receivership—all of which favor our arguments and, to the extent they

1    address *Lebron*'s permanency requirement, adopt it—Plaintiff argues that decisions after *Lebron*

2    "teach us that the gravamen of the *Lebron* test is the degree of government control, not the

3    duration."  Opp. at 19-21.  Similarly, Plaintiff argues that "[Fannie Mae and Freddie Mac] are

4    government actors, subject to the constraints of the Constitution" because FHFA has "complete"

5    control over them.  Opp. at 11-13.  Plaintiff also cites to various decisions to argue that this

6    Court can find that Fannie Mae is a government actor under alternative tests.  Opp. at 25-28.  All

7    of Plaintiff's arguments fail.

8         *First*, as explained in Defendants' Opening Brief, *Lebron* provides the controlling test to

9    determine if a private, federally-chartered corporation is a government actor for constitutional

10   purposes.  Mot. at 6-10.  *Lebron* makes clear that to make an otherwise private entity

11   governmental, permanent control by the government is required.  513 U.S. at 400; *see also*

12   *Herron II*, 861 F.3d at 167 ("[W]e apply the framework the Supreme Court established

13   in *Lebron* for determining whether a 'Government-created and -controlled corporation[ ]' is a

14   government actor for constitutional purposes"; and "permanency is 'a necessary condition

15   precedent' to consider a government-created corporation part of the government."); *Mik v.*

16   *Freddie Mac*, 743 F.3d 149, 168 (6th Cir. 2014) (same); *Am. Bankers Mortg. Corp. v. Freddie*

17   *Mac*, 75 F.3d 1401, 1406 (9th Cir. 1996) (same).  Indeed, the First Circuit confirms that

18   permanent control is the requirement.  *Barrios-Velazquez v. Asociacion de Empleados del Estado*

19   *Libre Asociado de Puerto Rico*, 84 F.3d 487, 492 (1st Cir. 1996).  In *Barrios-Velazquez*, the First

20   Circuit applied *Lebron* and held that there was no government action because "neither party in

21   the instant case has contended that the Government of Puerto Rico has retained *permanent*

22   *authority* over the directors of the [regulated entity]."  *Id.* (emphasis added).

23        *Second*, Plaintiff cites *Brentwood Academy v. Tennessee Secondary School Athletic*

24   *Association* to argue that permanent control is not a requirement under *Lebron* because the case

25   "make[s] no mention of the word 'permanent.'"  Opp. at 19 (citing 531 U.S. 288, 296 (2001)).

26   But the Supreme Court in *Brentwood* was not analyzing a government-created entity and

27   therefore did not conduct its analysis under *Lebron*; accordingly, it did not need to analyze

28   whether permanent structural control rested with the government.  Nevertheless, the Supreme

- 18 -

1    Court plainly endorses the *Lebron* holding, citing to it as an "example[] from our cases . . .

2    showing that the character of a legal entity is determined neither by its expressly private

3    characterization in statutory law, nor by the failure of the law to acknowledge the entity's

4    inseparability from recognized government officials or agencies." *Brentwood Acad.*, 531 U.S. at

5    296.

6         *Brentwood* provides an alternative test that applies to entities other than federally

7    chartered corporations—pervasive entwinement.  Because Fannie Mae (like Amtrak) is a

8    federally chartered corporation, *Lebron* rather than *Brentwood* controls.  Regardless, Fannie Mae

9    would not be deemed a government actor under *Brentwood* either.  Under *Brentwood*, for a

10   private entity to be deemed a government actor, the entity must be pervasively entwined with a

11   government agency or official that is "acting in their official capacity."  531 U.S. 298-300.  But

12   as we explained above in Section I, when FHFA as Conservator directs Fannie Mae's operations,

13   it does so in a *non-governmental* capacity.  *See supra* at 2-7.  Hence, conservatorship is

14   irrelevant under *Brentwood*.  *Herron I*, 857 F. Supp. 2d at 96 (rejecting plaintiff's "entwinement"

15   theory because "*Brentwood* did not change the law of conservatorship and receivership . . .

16   Fannie Mae was a private entity; when FHFA took over as conservator of Fannie Mae, it stepped

17   into Fannie Mae's private role").  Similarly, because "when the government acquires an

18   ownership interest in a corporation, it acts—and is treated—as any other shareholder," *Meridian*

19   *Invs., Inc.*, 855 F.3d at 579, Treasury is not pervasively entwined with Fannie Mae to make

20   Fannie Mae a government actor under *Brentwood*.

21        Nor could Plaintiff plausibly argue that anything about the government's relationship

22   with Fannie Mae (and Freddie Mac) other than FHFA's conservatorship and Treasury's financial

23   support somehow demonstrates "pervasive entwinement," as that would mean the Enterprises

24   were government actors for constitutional purposes *before* conservatorship.  That proposition

25   was uniformly rejected whenever asserted.  *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 359-

26   60 (5th Cir. 1977) (rejecting due process claim brought by a borrower against pre-

27   conservatorship Fannie Mae for commencing a non-judicial foreclosure); *Northrip v. Fannie*

28   *Mae*, 527 F.2d 23, 30 (6th Cir. 1975) (rejecting claim that pre-conservatorship Fannie Mae was a

1  federal actor subject to the Due Process Clause of the Fifth Amendment); *Am. Bankers Mortg.*

2  *Corp.*, 75 F.3d at 1406 (holding that similarly-situated, pre-conservatorship Freddie Mac was not

3  a government actor for purposes of a Fifth Amendment due process claim).

4       *Third*, Plaintiff cites to *Department of Transportation v. Association of American*

5  *Railroads* to argue that *Lebron* does not require that "the government's control over the

6  corporation be permanent." Opp. at 19-20 (citing 135 S. Ct. 1225 (2015)). Wrong. Nothing in

7  *American Railroads* alters *Lebron*. Indeed, the Supreme Court approvingly cites *Lebron* in

8  reaffirming that Amtrak was a government actor; it never purports to criticize or limit *Lebron*'s

9  analysis. *Ass'n of Am. R.R.*, 135 S. Ct. at 1233. And after *American Railroads*, other courts

10  have continued to recognize permanency as a required element under *Lebron*. Indeed, in

11  rejecting the same argument Plaintiff makes here, the D.C. Circuit "d[id] not read *Department of*

12  *Transportation v. Association of American Railroads*, as dispensing with the permanency

13  requirement," instead holding specifically that "permanency is a necessary condition precedent

14  to consider a government-created corporation part of the government." *Herron II*, 861 F.3d at

15  168 (internal quotation marks and citation omitted); *see also Adams*, 813 F.3d at 1261; *Sprauve*,

16  799 F.3d at 233; *Loren v. City of New York*, No. 16-cv-3605, 2017 WL 5903358, at *3 (S.D.N.Y.

17  Nov. 28, 2017) (denying a motion for reconsideration because "the government did not retain the

18  permanent authority to appoint a majority of the directors to [the entity]'s board, and thus did not

19  meet the standard set out in *Lebron*").

20       Regardless, *American Railroads* does not discuss the permanence of government

21  authority over Amtrak because the Supreme Court had already found it in *Lebron* and the parties

22  did not dispute it. Instead, they argued about a different issue: the Amtrak "'charter's disclaimer

23  of agency.'" *Ass'n of Am. R.R.*, 135 S. Ct. at 1233. The Court applied *Lebron* to resolve that

24  argument: "*Lebron* teaches that, for purposes of Amtrak's status as a federal actor or

25  instrumentality under the Constitution, the practical reality of federal control and supervision

26  prevails over Congress' disclaimer of Amtrak's governmental status." *Id.*

27       *Fourth*, Plaintiff's citation to *Becker v. Gallaudet University* for "[f]urther support that

28  *Lebron* focuses on the degree of control and not the duration" fares no better. Opp. at 20-21

1  (citing 66 F. Supp. 2d 16 (D.D.C. 1999)).  In that case, the court states that permanent control is

2  a required element under *Lebron*.  66 F. Supp. 2d at 20.  After applying the *Lebron* test, the

3  Court held that the defendant, Gallaudet University, was not a government actor because "[t]he

4  number of public positions on Gallaudet's Board of Trustees, [3 of 21], is a strong indication that

5  the federal government does not exercise sufficient control."  *Id.* at 20-21.  It was not necessary

6  for the court to analyze whether the government exerted *permanent* control, because the court

7  found that the government did not exert *any* control.

8          Finally, Plaintiff also cites *Pennsylvania v. Board of Directors of City Trusts of*

9  *Philadelphia*, a three-paragraph opinion that pre-dates *Lebron*.  Opp. at 27 (citing 353 U.S. 230,

10 231 (1957)).  *City Trusts* does not govern here and in any event is entirely consistent with

11 *Lebron*'s requirement of permanent structural control.  In *City Trusts*, "an act of the

12 Pennsylvania legislature" expressly provided for the board of a state college to be controlled by

13 "an agency of the State."  *Pennsylvania*, 353 U.S. at 231.[13]  The Court reached the unremarkable

14 conclusion that the college's admission decisions constituted state action.  *Id.*  By contrast, when

15 FHFA acts as Conservator, it directs Fannie Mae's operations in a non-governmental capacity

16 and without permanent structural control.  *See supra* at 2-7.  Likewise, Treasury "acts—and is

17 treated—as any other shareholder" when it supports financial institutions through stock

18 ownership.  *Meridian Invs., Inc.*, 855 F.3d at 579.  Thus, Plaintiff's argument that the

19 government controls Fannie Mae for purposes of *Lebron* or any other state-action test applicable

20 to constitutional claims must fail.

21                                **CONCLUSION**

22          For the reasons set forth herein, Fannie Mae and FHFA respectfully request that the

23 Court grant their motion for judgment on the pleadings and enter judgment in their favor.

24

25 Respectfully submitted,

26

27 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [13]     Of course, the mere legislative creation of an entity is not sufficient alone to make the
28 agency a government actor, as that is but one element of the test set forth in *Lebron*.

1    Dated:  February 28, 2018

2

3    FEDERAL HOUSING FINANCE AGENCY          FEDERAL HOUSING FINANCE AGENCY
     AND FEDERAL NATIONAL MORTGAGE
     ASSOCIATION                              By Its Attorney,

4

5    By Their Attorney,

6    /s/ Samuel C. Bodurtha                   /s/ Michael A.F. Johnson
     Samuel C. Bodurtha, Bar No. 7075         Michael A.F. Johnson (*pro hac vice*)
7    HINSHAW & CULBERTSON LLP                 ARNOLD & PORTER KAYE SCHOLER LLP
     321 South Main Street, Suite 301         601 Massachusetts Ave., NW
8    Providence, RI 02903                     Washington, DC 20001
     (401) 751-0842                           (202) 942-5000
9    (401) 751-0072 (fax)                     (202) 942-5999 (fax)
10   sbodurtha@hinshawlaw.com                 Michael.Johnson@arnoldporter.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 22 -

## **APPENDIX A**

I.      **Decisions holding that Fannie Mae and Freddie Mac are not Government Actors Subject to Constitutional Claims**

Appellate Court decisions:

1.  *Herron v. Fannie Mae*, 861 F.3d 160, 169 (D.C. Cir. 2017) ("[T]he government's indefinite but temporary control does not transform Fannie Mae into a government actor.")

2.  *Mik v. Freddie Mac*, 743 F.3d 149, 168 (6th Cir. 2014) ("Under the *Lebron* framework, Freddie Mac is not a government actor who can be held liable for violations of the Fifth Amendment's Due Process Clause.")

3.  *Rubin v. Fannie Mae*, 587 F. App'x 273, 275 (6th Cir. 2014) ("Under Supreme Court precedent, a necessary condition precedent for a conclusion that a once-private entity is a state actor is that the government's control over the entity is permanent.")

4.  *Bernard v. Fannie Mae*, 587 F. App'x 266, 271 (6th Cir. 2014) (citing *Lebron* and holding that "following FHFA's conservatorship, Fannie Mae is not a state actor")

5.  *Heibel v. Fannie Mae*, 581 F. App'x 543, 544 (6th Cir. 2014) (following Sixth Circuit precedent)

6.  *Freddie Mac v. Gaines*, 589 F. App'x 314, 316 (6th Cir. 2014) (following Sixth Circuit precedent)

District Court decisions:

1.  *Herron v. Fannie Mae*, 857 F. Supp. 2d 87, 92 (D.D.C. 2012) (Fannie Mae is not subject to *Bivens* claims because "the imposition of conservatorship . . . did not transform Fannie Mae into a government actor.")

2.  *Haney v. Fannie Mae*, No. 16-cv-01296, 2017 WL 1404103, at *5 (D. Colo. Mar. 9, 2017) ("It is well-settled that Fannie Mae is not a state actor for purposes of establishing the necessary state action" under § 1983. (citing *Herron*, 857 F. Supp. 2d at 92))

3.  *Beliz v. Loan Simple, Inc.*, No. 15-cv-01284, 2016 WL 424807, at *8 (D. Colo. Jan. 14, 2016), *report and recommendation adopted*, 2016 WL 409408 (D. Colo. Feb. 3, 2016) ("[T]the court agrees with those courts that have considered and rejected the argument that Freddie Mac and its companion, Fannie Mae, are government actors by virtue of the FHFA conservatorship. . . .  [T]he court concludes that the FHFA conservatorship does not create the type of permanent control required under *Lebron*.")

4.  *Caldwell v. Citimortgage, Inc.*, No. 15-cv-1784, 2015 WL 6445467, at *4 (N.D. Ill. Oct. 23, 2015) (agreeing with "[a]ll of the federal courts to address the issue [and that] have held that Freddie Mac is not a government actor and, therefore, cannot be held liable for violating a plaintiff's constitutional rights")

1

2

3

5. *Fisher v. JP Morgan Chase Bank, NA*, No. 14-cv-12734, 2015 WL 871066, at *4 (E.D. Mich. Feb. 27, 2015) ("The Courts have already determined that Fannie Mae is not a government actor" for constitutional purposes.)

4

5

6

6. *Hurst v. Fannie Mae*, No. 14-cv-10942, 2015 WL 300275, at *4 n.4 (E.D. Mich. Jan. 22, 2015), *aff'd*, 642 F. App'x 533 (6th Cir. 2016) (concluding even if plaintiff had standing, her claims would fail because "[f]ederal courts . . . across the country [have] found that neither Fannie Mae nor Freddie Mac are governmental actors post-conservatorship pursuant to the Supreme Court's decision in *Lebron*")

7

8

9

7. *Freddie Mac. v. Kama*, No. 14-cv-00137, 2014 WL 4980967, at *16 (D. Haw. Oct. 3, 2014) (citing *Lebron* and agreeing with the "numerous district courts [that] have held that Freddie Mac, and similar entity [Fannie Mae] did not become federal governmental actors post-conservatorship")

10

11

12

8. *Wright v. Fannie Mae*, No. 1:13-cv-04294, 2014 WL 12042555, at *3 (N.D. Ga. Sept. 22, 2014) ("Since government control of Defendant Fannie Mae is temporary, courts have consistently held that Defendant Fannie Mae is not a government actor, even though it is in a conservatorship.")

13

14

9. *Rush v. Freddie Mac*, No. 13-cv-11302, 2014 WL 1030842, at *4 (E.D. Mich. Mar. 17, 2014) ("Thus, under the *Lebron* test, Freddie Mac is not a governmental entity.")

15

16

10. *Narra v. Fannie Mae*, No. 2:13-cv-12282, 2014 WL 505571, at *4 (E.D. Mich. Feb. 7, 2014) ("[N]either Fannie Mae nor Freddie Mac are governmental actors post-conservatorship pursuant to the Supreme Court's decision in *Lebron*.")

17

18

19

11. *In re Kapla*, No. ADV 12-4000, 2014 WL 346019, at *3 (E.D. Mich. Jan. 30, 2014) (citing *Lebro*n and agreeing "a conservatorship is by nature temporary and therefore the third prong required to find that [Fannie Mae] is a federal actor for the purpose of a constitutional claim is not satisfied")

20

21

12. *Dias v. Fannie Mae*, 990 F. Supp. 2d 1042, 1062 (D. Haw. 2013) ("FHFA's conservatorship does not create the type of permanent control required under *Lebron*.")

22

23

13. *Parra v. Fannie Mae*, No. 13-cv-4031, 2013 WL 5638824, at *3 (C.D. Cal. Oct. 16, 2013) (agreeing that "Fannie Mae and its conservator, [FHFA], are not government actors for purposes of the Fifth Amendment's Due Process Clause")

24

25

14. *Williams v. Fannie Mae*, No. 1:13-cv-1899, 2013 WL 5361211, at *2 n.3 (N.D. Ga. Sept. 25, 2013) ("[C]ourts have consistently found that Fannie Mae is not a government actor for purposes of a constitutional claim.")

26

27

28

15. *Johnson v. Fannie Mae*, No. 2:12-cv-00452, 2013 WL 3819365, at *2 (W.D. Mich. July 23, 2013) ("Fannie Mae is not a governmental entity capable of violating [plaintiff's] federal constitutional rights.")

16. *In re Hermiz*, No. BR 12-52399, 2013 WL 3353928, at *2 (E.D. Mich. July 3, 2013) (citing *Lebron* and holding that "Freddie Mac is not a federal instrumentality for constitutional purposes")

17. *May v. Wells Fargo Bank, N.A.*, No. 4:11-cv-3516, 2013 WL 3207511, at *5 (S.D. Tex. June 24, 2013) ("This Court agrees and holds that, despite FHFA's conservatorship, Freddie Mac is not a government actor under *Lebron.*")

18. *Colbert v. Fannie Mae*, No. 12-cv-13844, 2013 WL 1629305, at *13 (E.D. Mich. Apr. 16, 2013) ("This Court agrees with the reasoning of other courts in this District concluding that Fannie Mae is not a state actor.")

19. *Bernard v. Fannie Mae*, No. 12-cv-14680, 2013 WL 1282016, at *5 (E.D. Mich. Mar. 27, 2013), *aff'd*, 587 F. App'x 266 (6th Cir. 2014) ("FHFA's conservatorship does not create the type of permanent control required under *Lebron.* Accordingly, the Court holds that Fannie Mae is not a government actor that can be held liable for an alleged Fifth Amendment due process violation.")

20. *Fannie Mae v. Mandry*, No. 12-cv-13236, 2013 WL 687056, at *5 (E.D. Mich. Feb. 26, 2013) ("FHFA's conservatorship does not create the type of permanent control required under *Lebron.* Accordingly, this Court holds that Fannie Mae and FHFA are not government actors that can be held liable for the Fifth Amendment due process violation.")

21. *Freddie Mac v. Matthews-Gaines*, No. 12-cv-12131, 2013 WL 423777, at *3 (E.D. Mich. Feb. 4, 2013), *aff'd*, 589 F. App'x 314 (6th Cir. 2014) (Freddie Mac is not a government actor because "*Lebron* requires that the government maintain permanent control over the entity.")

22. *Lopez v. Bank of Am., N.A.*, 920 F. Supp. 2d 798, 801 (W.D. Mich. 2013) ("Because Fannie Mae is not under permanent governmental control, it is not a governmental actor for purposes of constitutional challenges.")

23. *Fannie Mae v. Lemaire*, No. 12-cv-11479, 2012 WL 12930829, at *2 (E.D. Mich. Dec. 20, 2012) (citing *Lebron* and holding "Defendants' due process argument must fail because Fannie Mae is a private corporation and not a government actor for constitutional purposes").

24. *In re Kapla*, 485 B.R. 136, 152 (Bankr. E.D. Mich. 2012), *aff'd*, 2014 WL 346019 (E.D. Mich. Jan. 30, 2014) ("Fannie Mae is not a government actor under *Lebron* for purposes of constitutional claims.")

25. *Rubin v. Fannie Mae*, No. 12-cv-12832, 2012 WL 6000572, at *3 (E.D. Mich. Nov. 30, 2012) (citing *Lebron* and holding "that Fannie Mae is not a federal actor [for the purpose of] constitutional claims")

26. *Ljekocevic v. CitiMortgage*, No. 11-cv-14403, 2012 WL 5379571, at *4 (E.D. Mich. Sept. 25, 2012), *report and recommendation adopted*, 2012 WL 5379370 (E.D. Mich. Oct. 31, 2012) ("Freddie Mac is a private corporation—not a government actor—for constitutional purposes.")

27. *Syriani v. Freddie Mac Multiclass Certificates, Series 3365*, No. 12-cv-3035, 2012 WL 6200251, at *4 (C.D. Cal. July 10, 2012) (applying *Lebron* and holding "Freddie Mac does not become a governmental actor for Fifth Amendment purposes merely because it is placed into conservatorship. [FHFA]'s 'control' is merely the same control that Freddie Mac had before the conservatorship.")

28. *Garcia v. Fannie Mae*, No. 1:13-cv-1259, 2014 WL 2210784, at *3 (W.D. Mich. Apr. 30, 2014), *aff'd*, 782 F.3d 736 (6th Cir. 2015) (citing *Herron* and holding that "Fannie Mae is not a governmental actor" for the plaintiff's § 1983 claim)

29. *Freddie Mac v. Shamoon*, 922 F. Supp. 2d 641, 644 (E.D. Mich. 2013) (applying *Lebron* and holding that "Freddie Mac, and similar entity Fannie Mae, [are] not governmental actors post-conservatorship, and dismissing claims alleging a constitutional violation as a matter of law")

30. *Oliver v. Bank of Am., N.A.*, No. 1:14-cv-00012, 2014 WL 11532239, at *6 (E.D. Tenn. Sept. 10, 2014) (agreeing with the "[n]umerous federal courts [that] have specifically considered the issue of whether post-conservatorship [Fannie Mae] qualifies as a state actor under the test set forth in *Lebron* and have consistently found that [Fannie Mae] is not a state actor")

31. *Colyer v. Freddie Mac*, No. 13-cv-10425, 2014 WL 1048009, at *6 (E.D. Mich. Mar. 18, 2014) (dismissing plaintiff's § 1983 claim because "Freddie Mac is not a governmental actor")

32. *Smalls v. Riviera Towers Corp.*, No.16-cv-847, 2017 WL 4180115, at *4 n.4 (D.N.J. Sept. 21, 2017) (Fannie Mae is "not considered to be a state actor for purposes of Section 1983 or constitutional claims.")

33. *Narra v. Fannie Mae*, No. 2:13-cv-12282, 2014 WL 505571, at *4 (E.D. Mich. Feb. 7, 2014) ("Federal courts . . . have comprehensively examined the issue and found that neither Fannie Mae nor Freddie Mac are governmental actors post-conservatorship pursuant to the Supreme Court's decision in *Lebron*.")

34. *Williams v. Fannie Mae*, No. 13-cv-12776, 2013 WL 5445883, at *2 (E.D. Mich. Sept. 30, 2013) ("Fannie Mae is not a state actor [for 'constitutional due process . . . violations.']")

35. *Yousif v. Fannie Mae*, No. 12-cv-12427, 2013 WL 980159, at *2 n.2 (E.D. Mich. Mar. 13, 2013) ("Fannie Mae is neither a governmental entity nor a state actor" subject to plaintiff's due process claim.)

36. *Freddie Mac v. Montague*, No. 1:13-cv-1162, 2014 WL 4313633, at *5 (W.D. Mich. Sept. 2, 2014) (Freddie Mac "is not a state actor who can be held liable for violations of the Due Process Clause.")

**II.     Decisions holding that FHFA as Conservator is not a Government Actor Subject to Constitutional Claims**

1.  *Herron v. Fannie Mae*, 861 F.3d 160, 169 (D.C. Cir. 2017) (As Conservator, "FHFA shed its government character and became a private party." (international quotation marks and alterations omitted))

2.  *Parra v. Fannie Mae*, No. 13-cv-4031 FMO SHX, 2013 WL 5638824, at *3 (C.D. Cal. Oct. 16, 2013) ("FHFA, which took over as Fannie Mae's conservator, also does not qualify as a government actor.")

3.  *Dias v. Fannie Mae*, 990 F. Supp. 2d 1042, 1061 (D. Haw. 2013) ("Similarly, the FHFA, which took over as Fannie Mae's conservator, also does not qualify as a government actor.")

4.  *Fannie Mae v. Mandry*, No. 12-cv-13236, 2013 WL 687056, at *5 (E.D. Mich. Feb. 26, 2013) ("Fannie Mae and FHFA are not government actors that can be held liable for [a] Fifth Amendment due process violation.")

5.  *Herron v. Fannie Mae*, 857 F. Supp. 2d 87, 95 (D.D.C. 2012) ("FHFA as conservator for Fannie Mae is not a government actor.")

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the District of Rhode Island by using the CM/ECF system on February 28, 2018.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                        */s/ Samuel C. Bodurtha*
                                        Samuel C. Bodurtha