UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JUDITH A. SISTI,<br>    Plaintiff,<br><br>v.<br><br>FEDERAL HOUSING FINANCE<br>AGENCY, FEDERAL HOME LOAN<br>MORTGAGE CORPORATION, and<br>NATIONSTAR MORTGAGE, LLC,<br>    Defendants. | C.A. No. 17-005-JJM-LDA |
| CYNTHIA BOSS,<br>    Plaintiff,<br><br>v.<br><br>FEDERAL HOUSING FINANCE<br>AGENCY and FEDERAL NATIONAL<br>MORTGAGE ASSOCIATION,<br>    Defendants. | C.A. No. 17-042-JJM-LDA |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

The Plaintiffs in these cases seek a ruling that Defendants Federal Housing Finance Agency ("FHFA"), Federal National Mortgage Association ("Fannie Mae"), and Federal Home Loan Mortgage Corporation ("Freddie Mac") are government actors, and thus, violated the Plaintiffs' Fifth Amendment due process rights when they conducted non-judicial foreclosures on the Plaintiffs' homes. The Defendants have moved for judgment on the pleadings. For the following reasons, their motions are DENIED.

I.  BACKGROUND

Because the Defendants have moved for judgment on the pleadings, the Court accepts as true the well-pleaded facts from the Amended Complaints and draws all reasonable inferences in the Plaintiffs' favor. *Doe v. Brown Univ.*, --- F.3d ----, 2018 WL 3454469, at *1 (1st Cir. July 18, 2018).

A.  Fannie Mae, Freddie Mac, and FHFA

During the subprime mortgage crisis, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. § 4501 *et seq.*, creating FHFA and empowering it to supervise and regulate Fannie Mae and Freddie Mac (collectively, the "government-sponsored enterprises" or "GSEs"). HERA also empowered FHFA to place the GSEs into conservatorship or receivership "for the purpose of reorganizing, rehabilitating, or winding up the affairs" of the GSEs. 12 U.S.C. § 4617(a)(2). FHFA's director exercised this power in the fall of 2008 and placed the GSEs into conservatorship.

While acting as conservator, FHFA controls all of the rights, titles, powers, and privileges of the shareholders and boards of directors of the GSEs. FHFA elects the entirety of both boards of directors; the shareholders do not. FHFA also determines the boards' size and scope of authority.

FHFA controls the business activities of the GSEs, and manages them to serve public ends. It does not manage the GSEs to maximize profitability or shareholder returns. FHFA prohibits the GSEs from paying any dividends to their common shareholders.

2

There is no date certain for when the conservatorship will end, nor will it end upon the completion or attainment of predetermined criteria. Instead, FHFA's director has total authority and discretion over whether its control of the GSEs will end.[1]

Presently, the United States government owns all of the senior preferred stock of the GSEs; this stock is senior in right for both dividends and liquidation to all other preferred or common stock. The government also has warrants to purchase 79.9% of the GSEs' common stock. The GSEs cannot issue new shares, declare dividends, or dispose of assets without approval of the U.S. Treasury. In exchange, Fannie Mae has received some $116 billion from the Treasury to maintain liquidity; Freddie Mac has received some $71 billion.

Both GSEs have paid more dividends into the Treasury than they received in the bailout: Fannie Mae has paid approximately $151 billion and Freddie Mac has paid approximately $98 billion. However, under the senior preferred stock purchase agreement, these dividend payments do not reduce the government's ownership interest in the GSEs. The Congressional Budget Office considers payments from the GSEs into the Treasury to be "intragovernmental payments."

The GSEs cannot redeem the senior preferred stock prior to the termination of the government's funding commitment; that will not occur until all of the GSEs' liabilities have been satisfied.

---

[1] The director of FHFA can either issue an order terminating the conservatorship, or can appoint FHFA receiver of the GSEs. If the latter action is taken, the conservatorship ends, but FHFA would maintain control as receiver.

After appointing itself conservator of the GSEs, FHFA created the Servicer Alignment Initiative ("SAI"), which directs actions taken by the GSEs' mortgage servicers when servicing a delinquent mortgage. The SAI requires servicers of GSE-owned mortgages to follow specific timelines for processing foreclosures. The SAI directed the GSEs' servicers to use non-judicial foreclosure procedures when foreclosing in Rhode Island.

B.    The Plaintiffs

Judith Sisti owned real property in North Providence, Rhode Island, subject to a mortgage. In May of 2012, Ms. Sisti became delinquent on her mortgage payments. Four years later, Defendant Nationstar Mortgage, LLC,[2] as agent for Freddie Mac, conducted a foreclosure sale on Ms. Sisti's property. Freddie Mac made the highest bid, and Nationstar signed and recorded a foreclosure deed. This was a non-judicial foreclosure: none of the Defendants provided Ms. Sisti the opportunity to have an evidentiary hearing, to confront or cross-examine witnesses, to present arguments and evidence, to be represented by counsel, or to have a neutral hearing officer adjudicate the matter. Following the foreclosure, Freddie Mac sought to evict Ms. Sisti.

Cynthia Boss owned real property in Woonsocket, Rhode Island, subject to a mortgage held by Santander Bank.[3] Santander Bank assigned its interest in

---

[2] Nationstar has not moved for judgment on the pleadings nor made any other dispositive motion in Ms. Sisti's case.

[3] Santander was named a Defendant in Ms. Boss' case; however, the bank was previously dismissed by stipulation.

4

Ms. Boss's mortgage to Fannie Mae in 2014. In March of 2016, Fannie Mae conducted a foreclosure sale on Ms. Boss's property in which Fannie Mae made the highest bid. Following the sale, Fannie Mae and Santander signed and recorded a foreclosure deed. Just like Ms. Sisti, Ms. Boss did not have the opportunity to be heard, confront and cross witnesses, present arguments and evidence, have counsel, or have a neutral decisionmaker during her foreclosure proceedings. Fannie Mae has sued in state court to evict Ms. Boss.

Seeking to prevent their evictions, Ms. Sisti sued FHFA, Freddie Mac, and Nationstar; Ms. Boss sued FHFA, Fannie Mae, and Santander. Plaintiffs allege that FHFA, Fannie Mae, and Freddie Mac are government entities, and as such, that they deprived the Plaintiffs of due process by conducting non-judicial foreclosures. FHFA, Fannie Mae, and Freddie Mac have moved for judgment on the pleadings. Because these cases present the same legal issues, the Court consolidated them for oral argument and disposition of the motions.[4]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings. "A motion for judgment on the pleadings bears a strong family resemblance to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and these two types of motions are treated in much the same way." *Kando v. R.I.*

---

[4] In addition, both Plaintiffs are represented by the same attorney, and FHFA, Fannie Mae, and Freddie Mac are represented by the same counsel. The briefs filed in both cases are nearly identical. For purposes of this motion, the only difference is that Ms. Sisti has sued Freddie Mac whereas Ms. Boss has sued Fannie Mae.

5

*State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018). "[A] 'court may not grant a defendant's Rule 12(c) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."'" *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007) (quoting *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988)).

III. DISCUSSION

The Court begins by briefly addressing the relevant case law. The Court next examines the claims as to Fannie Mae and Freddie Mac. Finally, the Court turns its analysis to FHFA as the conservator of the GSEs.

A. The relevant case law

The Court holds that the Plaintiffs can prove that the GSEs and FHFA-as-conservator are government actors, and thus, can prove that the Defendants denied Plaintiffs due process by conducting non-judicial foreclosures. This Court is aware that this holding is contrary to every other court to reach the issue. Numerous district courts, as well as the Sixth and D.C. Circuits, have concluded that the Defendants are not government actors for purposes of constitutional claims—a fact the Defendants emphasized throughout their briefing and at oral argument (as well they should have). *See, e.g.*, Defs.' Reply at 29–33 (listing decisions of other courts).

Nevertheless, none of those cases is binding on this Court; they are only available to the Court for any persuasive value they may have. This Court, however, is duty-bound to conduct an independent inquiry of the matter before it, bound by the law that controls it. *See D'Arezzo v. Providence Ctr., Inc.*, 142 F. Supp. 3d 224, 228–29 (D.R.I. 2015). In so doing, the Court is not persuaded by the reasoning of prior

6

cases—discussed more below—and instead concludes that the Defendants can be found to be government actors.

> B. The Plaintiffs can prove that Fannie Mae and Freddie Mac are government actors for purposes of constitutional claims.

The starting point for the Court's analysis is *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995). In *Lebron*, the United States Supreme Court announced that, where "the Government [1] creates a corporation by special law, [2] for the furtherance of governmental objectives, and [3] retains for itself permanent authority to appoint a majority of the directors of that corporation," then the corporation is "part of the Government" for constitutional claims. *Id.* at 400.

*Lebron* involved a challenge to Amtrak's refusal to display a billboard; the plaintiff argued that Amtrak was a government entity, and therefore, that it violated the First and Fifth Amendments in rejecting the advertisement. *Id.* at 377. Amtrak, however, argued that Congress had explicitly declared it to not be a government entity, and that that language controlled. *Id.* at 392. The Court rejected Amtrak's arguments, holding that "[i]t is not for Congress to make the final determination of Amtrak's status as a Government entity for purposes of determining the constitutional rights of citizens affected by its actions." *Id.* To allow Congress to determine whether the Constitution applied to a government-created entity would allow the government "to evade the most solemn obligations imposed in the Constitution by simply resorting to the corporate form." *Id.* at 397. The Court explained, "[o]n that thesis, *Plessy v. Ferguson*, 163 U.S. 537 (1896), can be resurrected by the simple device of having the State of Louisiana operate segregated

7

trains through a state-owned Amtrak." *Lebron*, 513 U.S. at 397; *see also id.* at 392–93 ("The Constitution constrains governmental action 'by whatever instruments or in whatever modes that action may be taken.' And under whatever congressional label." (quoting *Ex parte Virginia*, 100 U.S. 339, 346–47 (1880))).

Turning its analysis to whether Amtrak was in fact a government actor, the *Lebron* Court noted that "Amtrak is not merely in the temporary control of the Government (as a private corporation whose stock comes into federal ownership might be); it is established and organized under federal law for the very purpose of pursuing federal governmental objectives, under the direction and control of federal governmental appointees." *Id.* at 398. The Court then noted that, despite a history of treating the government as any other shareholder when it acquires interest in a corporation, *see id.* at 398–99, this treatment did not necessarily follow where "the State has specifically created that corporation for the furtherance of governmental objectives, and not merely holds some shares *but controls the operation of the corporation through its appointees.*" *Lebron*, 513 U.S. at 399 (emphasis added).

The *Lebron* Court next recounted its decision in the *Regional Rail Reorganization Act Cases*, 419 U.S. 102 (1974), where the Court distinguished Amtrak from Conrail, noting that the latter was not a federal instrumentality. 513 U.S. at 399. It reached this conclusion despite the government having the power to appoint the majority of Conrail's directors because it had a provision automatically terminating government control: "[f]ull voting control" would revert to Conrail shareholders if federal obligations fell below fifty percent of the railroad's

8

indebtedness. *Id.* (alteration in original) (quoting *Reg'l Rail*, 419 U.S. at 152); *see also id.* (also relying on the fact that Conrail's directors were required to operate the entity for private purposes).

Twenty years later, the Supreme Court decided *Department of Transportation v. Association of American Railroads*, 135 S. Ct. 1225 (2015), in which the Court reaffirmed *Lebron* and held that Amtrak, as a government entity, could constitutionally be granted regulatory power under the Passenger Rail Investment and Improvement Act of 2008. *Id.* at 1229–30, 1233. In so holding, the Court rejected Congress's pronouncement that Amtrak was a private company, and thus, exempt from constitutional obligations. *Id.* at 1231. The Court reiterated that, "[t]o hold otherwise would allow the Government 'to evade the most solemn obligations imposed in the Constitution by simply resorting to the corporate form.'" *Id.* at 1233 (quoting *Lebron*, 513 U.S. at 397); *see also Yeo v. Town of Lexington*, 131 F.3d 241, 253 (1st Cir. 1997) (en banc) (citing *Lebron* and noting that a "statute cannot be determinative of the outcome of the federal constitutional question"). The Supreme Court emphasized that, "*Lebron* teaches that, for purposes of [an entity's] status as a federal actor or instrumentality under the Constitution, the practical reality of federal control and supervision prevails over Congress' disclaimer of [the entity's] governmental status." *Ass'n of Am. R.Rs.*, 135 S. Ct. at 1233; *see also Barrios-Velázquez v. Asociación de Empleades del Estado Libre Asociado de P.R.*, 84 F.3d 487, 492 (1st Cir. 1996) ("The Supreme Court in *Lebron* focused on the degree of control that the federal government had over Amtrak.").

9

Both Plaintiffs and Defendants agree that *Lebron*'s three-part test controls whether Fannie Mae and Freddie Mac are government entities. The parties do not dispute that the first two prongs are satisfied, and the Court accepts at this stage of the litigation the Plaintiffs' factual allegation that FHFA currently has authority to appoint a majority of the Fannie Mae and Freddie Mac boards. The only disputed issue is whether the government has retained "permanent authority" to make these appointments. *Lebron*, 513 U.S. at 400.

Plaintiffs argue that HERA gave FHFA complete and total control over Fannie Mae and Freddie Mac, and that this authority will continue uninterrupted until the government decides to end conservatorship (if, indeed, it ever does), rendering government control effectively permanent. The Defendants, however, argue that HERA gives FHFA *indefinite*, but not *permanent*, control over the GSEs, and that *Lebron* implies that any form of government control short of a statutory grant of power is merely temporary.

The non-controlling precedent to date, alluded to above in section III.A, has followed the Defendants' line of argument. *See, e.g., Herron v. Fannie Mae (Herron II)*, 861 F.3d 160, 169 (D.C. Cir. 2017); *Mik v. Freddie Mac*, 743 F.3d 149, 168 (6th Cir. 2014); *Haney v. Fannie Mae*, No. 16-cv-01296, 2017 WL 1404103, at *5 (D. Colo. Mar. 9, 2017); *see also* Defs.' Reply at 29–33 (listing decisions of other courts). Numerous though the decisions may be, all of the opinions share a similar logic—one that does not persuade this Court.

Nearly every case cited by Defendants relies on *Herron v. Fannie Mae* (*Herron I*), 857 F. Supp. 2d 87 (D.D.C. 2012).[5] In finding that government control was not "permanent," that court relied principally on the statutory purpose for the conservatorship: "reorganizing, rehabilitating, or winding up" the affairs of the GSEs. *Id.* at 95 (citing 12 U.S.C. § 4617(a)(2)). The *Herron I* court concluded based on this statutory purpose that "the enabling statute expressly allows FHFA temporary but complete control over Fannie Mae, not permanent control." *Id.* In affirming, the D.C. Circuit agreed, noting that the statutory language served "an inherently temporary purpose." *Herron II*, 861 F.3d at 169 (quoting *Rubin v. Fannie Mae*, 587 F. App'x 273, 275 (6th Cir. 2014)). The Defendants urge this Court to follow a similar line of reasoning.

But the Court cannot defer to a congressional declaration that serves to disclaim the constitutional obligations of a government-created entity. *See Ass'n of Am. R.Rs.*, 135 S. Ct. at 1233; *Lebron*, 513 U.S. at 392; *Yeo*, 131 F.3d at 253. To be sure, § 4617(a)(2) does not explicitly disclaim the GSEs' status as federal entities as Amtrak's charter does. *See Lebron*, 513 U.S. at 391. But its language still has the same effect—under *Lebron*, "permanent" government control is required, and here

---

[5] All but two cases cited by Defendants rely explicitly on *Herron I* or cite cases that rely on *Herron I*. The two cases that do not cite *Herron I* at all have other analytical flaws. *See Fannie Mae v. Lemaire*, No. 12-11479, 2012 WL 12930829, at *2 (E.D. Mich. Dec. 20, 2012) (conclusory statement that, under *Lebron*, Fannie Mae is "not a government actor for constitutional purposes"); *Ljekocevic v. CitiMortgage*, No. 11-14403, 2012 WL 5379571, at *4 (E.D. Mich. Sept. 25, 2012) (relying on two pre-conservatorship cases to hold that post-conservatorship Freddie Mac is not a government actor for constitutional purposes).

11

Congress is disclaiming permanent control. *Id.* at 400. If the Court were to accept this at face value, it would be dispositive of *Lebron*'s permanency requirement and would give the government authority to "evade the most solemn obligations imposed in the Constitution" by taking control of corporations through "temporary" conservatorships. *Id.* at 397; *see also Ass'n of Am. R.Rs.*, 135 S. Ct. at 1234 (Alito, J., concurring) (warning of the danger of government action veiled as private action and cautioning that "a vital constitutional principle must not be forgotten: Liberty requires accountability"). For these reasons, the Supreme Court has held that "for purposes of [an entity's] status as a federal actor or instrumentality under the Constitution, *the practical reality of federal control and supervision prevails* over Congress' disclaimer of [the entity's] governmental status." *Ass'n of Am. R.Rs.*, 135 S. Ct. at 1233 (emphasis added).[6]

The practical reality here is that the government effectively controls Fannie Mae and Freddie Mac permanently. The government appoints all of the members of the GSEs' boards of directors and controls every operational aspect of the entities. It owns all of the GSEs' senior preferred stock and owns warrants to purchase 79.9% of their common stock. The government does not allow the GSEs to pay dividends to shareholders; rather, they must be paid directly into the U.S. Treasury. Indeed, to

---

[6] Plaintiffs argue that *Association of American Railroads* dispensed with the permanency requirement set forth in *Lebron*. The Court disagrees. Courts generally do not overturn precedent by implication. *Herron II*, 861 F.3d at 168. Rather, this Court reads *Association of American Railroads* as requiring courts to examine the "practical reality of federal control and supervision" in applying the *Lebron* test, including in determining whether government control is permanent. 135 S. Ct. at 1233.

date the GSEs have paid more into the Treasury than they received in the 2008 bailout.

But perhaps most important is the unchecked control the government has over the duration of its total takeover of the GSEs. Absent an act of Congress, the conservatorship will only end in one of two ways: the director of FHFA can decide to end the conservatorship, or it can appoint FHFA receiver, whereupon FHFA will retain control of the GSEs as receiver. Either way, the decision to end the conservatorship is left entirely to the discretion of the government. This is "worlds apart" from other scenarios in which the Supreme Court has found or suggested government control is only temporary. *See Reg'l Rail*, 419 U.S. at 152 (provision automatically terminating government control); *Lebron*, 513 U.S. at 398 (government ownership of private corporation's stock where corporation not organized under federal law for public purpose).[7] The practical reality, then, is that the government can control Fannie Mae and Freddie Mac in perpetuity, even though Congress authorized a facially temporary conservatorship. This renders the government's

---

[7] Defendants and other courts often cite dicta from *Lebron* for the proposition that "a private corporation whose stock comes into federal ownership" is only in the temporary control of the government. 513 U.S. at 398; *see, e.g., Herron II*, 861 F.3d at 169; *Meridian Invs., Inc. v. Freddie Mac*, 855 F.3d 573, 579 (4th Cir. 2017). The language, in full, reads: "Amtrak is not merely in the temporary control of the Government (as a private corporation whose stock comes into federal ownership might be); it is established and organized under federal law for the very purpose of pursuing federal governmental objectives, under the direction and control of federal governmental appointees." *Lebron*, 513 U.S. at 398. In context, then, a corporation whose stock comes into federal ownership, established and organized under federal law for a public purpose, under the federal direction and control, might be under permanent government control. That was the case in *Lebron*, and is the case here.

control effectively permanent, and requires Fannie Mae and Freddie Mac to be held to "the most solemn obligations imposed in the Constitution." *Lebron*, 513 U.S. at 397.

In light of the foregoing, and accepting the Plaintiffs' allegations as true at this stage, it is not "beyond doubt" that Plaintiffs cannot prove their claims against Fannie Mae and Freddie Mac. *See Curran*, 509 F.3d at 43. Thus, those Defendants are not entitled to judgment on the pleadings.

    C.    **The Plaintiffs can prove that FHFA-as-conservator is a government actor for purposes of constitutional claims.**

Defendants urge the Court to conclude that FHFA, as conservator of the GSEs, is a private entity for constitutional claims. They rely on language in HERA that states FHFA "shall, as conservator or receiver, and by operation of law, immediately succeed to all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity." 12 U.S.C. § 4617(b)(2)(A)(i). This language, they argue, was modeled on the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), which granted similar powers to the Federal Deposit Insurance Corporation ("FDIC"). *Compare id., with* 12 U.S.C. § 1821(d)(2)(A)(i). And, the Defendants point out, the Supreme Court has construed this language as "indicat[ing] that the FDIC as receiver 'steps into the shoes' of the failed [savings and loan]," as a private entity for state law tort claims. *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994) (quoting *Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 585 (1989)).

14

Plaintiffs, on the other hand, contend that *O'Melveny* has a more limited reach than Defendants suggest, and that this Court's analysis should be guided by *FDIC v. Meyer*, 510 U.S. 471 (1994). In *Meyer*, the Supreme Court addressed whether the statutory sue-and-be-sued clause of the Federal Savings and Loan Insurance Corporation ("FSLIC"), the statutory predecessor for the FDIC, waived its sovereign immunity for the purposes of constitutional claims for actions taken as a receiver. *Id.* at 481–83. The *Meyer* Court concluded that the clause had indeed waived FSLIC's sovereign immunity, and thus, that it was a government entity. *Id.* at 483; *see also id.* at 486 (rejecting *Bivens* claim against FSLIC because "a damages remedy against federal agencies would be inappropriate"). The Plaintiffs here argue that, because the FDIC contains the same sue-and-be-sued clause, *Meyer* means that the FDIC is a government actor when acting as a receiver for constitutional claims, as only government entities can have (and thus waive) sovereign immunity, narrowing the breadth the Defendants give *O'Melveny*'s "steps into the shoes" holding.

There is merit to Plaintiffs' argument. *Meyer* directly addressed constitutional claims; *O'Melveny* did not. And the *Meyer* holding makes little sense if *O'Melveny* controls when the federal agency is defending a suit alleging constitutional claims. Accordingly, this Court does not read *O'Melveny* as requiring the Court to hold FHFA is a private actor for constitutional claims.

Applying the logic of *Meyer* to this case reveals that FHFA has waived sovereign immunity, and thus, can be considered a government actor. As the D.C. Circuit recently explained:

> Assuming the FHFA has sovereign immunity when it acts on behalf of the Companies as conservator, the Congress has waived the agency's immunity by consenting to suit. The Congress has granted Freddie Mac "power . . . to sue and be sued . . . in any State, Federal, or other court," 12 U.S.C. § 1452(c)(7), and has granted Fannie Mae the same "power . . . to sue and to be sued . . . in any court of competent jurisdiction, State or Federal," *id.* § 1723a(a). The FHFA "by operation of law [ ] immediately succeed[ed] to . . . all . . . powers" of the Companies upon its appointment as conservator—including the Companies' power to sue and be sued—under the so-called Succession Clause of the Recovery Act. *Id.* § 4617(b)(2)(A)(i). Such a statutory grant of power to "sue and be sued" constitutes an "unequivocally expressed" waiver of sovereign immunity.

*Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 622 (D.C. Cir. 2017) (alterations in original) (citations omitted). Because only federal entities can waive sovereign immunity, it logically follows that FHFA-as-conservator is a government actor.[8]

Furthermore, even if this Court accepted the Defendants' premise that *O'Melveny* controlled the Court's analysis, it would still reach the same conclusion. The *O'Melveny* Court held that FDIC, when acting as a receiver for a private entity, steps into the shoes of that private entity for state law claims. This holding makes sense given the purpose of receivership: "to preserve a company's assets, for the benefit of creditors, in the face of bankruptcy." Brian Taylor Goldman, *The Indefinite*

---

[8] Courts in other contexts have found FHFA to be a government actor, even when acting as conservator. *See In re Countrywide Fin. Corp.*, 900 F. Supp. 2d 1055, 1066 (C.D. Cal. 2012) (in construing ambiguous statute of limitations, holding that "FHFA is a federal agency even when acting as conservator or receiver"); *FHFA v. Royal Bank of Scot. Grp. PLC*, No. 3:11-cv-01383, 2012 WL 3580522, at *4 (D. Conn. Aug. 17, 2012) (holding that, even if FHFA steps into the shoes of a private plaintiff, it did not convert FHFA's suit into a "private action" under the Private Securities Litigation Reform Act); *Nevada ex rel. Hager v. Countrywide Home Loans Serv., LP*, No. 3:10-cv-419, 2011 WL 484298, at *3 (D. Nev. Feb. 4, 2011) ("[T]he Court finds that FHFA, as conservator for Fannie Mae and as an intervenor in this case, is a federal agency with the right to remove."); *see also Royal Bank*, 2012 WL 3580522, at *4 (collecting cases and noting that "courts have treated federal agencies acting in their capacities as receivers or conservators differently from private litigants").

*Conservatorship of Fannie Mae and Freddie Mac is State-Action*, 17 J. Bus. & Sec. L. 11, 23 (2016). When FDIC is appointed receiver, it must dispose of the received entity's assets, resolving obligations and claims made against the entity. *Id.* at 24; *see also* 12 U.S.C. § 1821(d)(2)(E) (allowing FDIC-as-receiver to liquidate insured deposit institutions); 12 U.S.C. § 4617(b)(2)(E) (allowing FHFA-as-receiver to place GSEs in liquidation and sell assets). Notably, "[i]n receivership, the receiver owes fiduciary duties to the creditors, which the corporation would otherwise owe to creditors during a period of insolvency." Goldman, *supra*, at 24; *see Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 201 (2d Cir. 2004) ("It is undisputed that, as a receiver, the FDIC owes a fiduciary duty to the Bank's creditors . . . ."). It logically follows, then, that the receiver steps into the shoes of the private entity, because it assumes the fiduciary duties of that entity. *See O'Melveny*, 512 U.S. at 86; Goldman, *supra*, at 24.

Conservatorship, in contrast, serves a different function. FHFA has described the purpose of conservatorship is "to establish control and oversight of a company to put it in a sound and solvent condition." Goldman, *supra*, at 25; *accord* 12 U.S.C. § 1821(d)(2)(D) (conservator may take action to put entity in "a sound and solvent condition," as well as carry on entity's business and conserve assets); 12 U.S.C. § 4617(b)(2)(D) (same). Conservators, unlike receivers, have a fiduciary duty running to the corporation itself.[9] Goldman, *supra*, at 26.

---

[9] As Plaintiffs allege, the federal government controls all of the GSEs' senior preferred stock and holds warrants to purchase up to 79.9% of the common stock. This suffices to make the government a "dominant shareholder" with a fiduciary duty

This is "critically distinct" from the fiduciary duties owed as a receiver—the receiver does indeed "step into the shoes" of the entity by assuming the fiduciary duties *of* the entity, but the conservator does not: it remains distinct, and rather owes a duty *to* the entity. *Id.* Given the difference in fiduciary duties, *O'Melveny*'s "steps into the shoes" holding makes sense in the context of receivership, but not in the context of conservatorship.

To be sure, both HERA and FIRREA provide for FHFA and FDIC, respectively, to have the powers of conservatorship and receivership.[10] *See* 12 U.S.C. § 4617(b)(2)(A)–(E); 12 U.S.C. § 1821(d)(2)(A)–(E). But they are different powers, and no one disputes in this case that FHFA is indeed conservator, not receiver, of the GSEs. *See also Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 227–28 (D.D.C. 2014) (recognizing difference between FHFA conservatorship and receivership of GSEs and holding that FHFA is not acting as a receiver). Accordingly, then, if *O'Melveny*

---

running *to the corporation*—a far cry from a receiver who steps into the fiduciary duties of a failing enterprise. Goldman, *supra*, at 26.

[10] Some of HERA's and FIRREA's provisions address conservatorship and receivership separately, 12 U.S.C. § 4617(b)(2)(D)–(E); 12 U.S.C § 1821(d)(2)(D)–(E), while others address both conservatorship and receivership powers in the same provision, 12 U.S.C. § 4617(b)(2)(A)–(C); 12 U.S.C § 1821(d)(2)(A)–(C). The language in dispute here comes from the latter category, where the statutes state that the federal entities "shall, as conservator, or receiver . . . succeed to all rights, titles, powers, and privileges" of the private entity. 12 U.S.C. § 4617(b)(2)(A); 12 U.S.C § 1821(d)(2)(A). But just because both conservatorship and receivership are, at times, addressed in the same section does not mean that the language must be construed the same in both contexts. This is particularly so given that other provisions give different powers depending on whether the federal entity is exercising conservatorship or receivership powers; that the fiduciary duties are different, as discussed above; and the fact that the statutes use the disjunctive "or" and not the conjunctive "and" when addressing the different powers in the same provision.

controlled, this Court could not say as a matter of law that FHFA-as-conservator "steps into the shoes" of the private entity as FDIC-as-receiver did.

In light of the foregoing, the Court cannot conclude at this stage that FHFA is a private actor for constitutional claims while acting as conservator. Because it is not "beyond doubt" that Plaintiffs cannot prove their claims against the agency, *see Curran*, 509 F.3d at 43, FHFA is not entitled to judgment on the pleadings.

IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Defendants' motions for judgment on the pleadings.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

August 2, 2018